## THE DEXTER.

1. The rule of navigation prescribed by the act of Congress of April 29th, 1864, "for preventing collisions on the water," which requires "when sailing-ships are meeting end on, or nearly so, the helms of both shall be put to port," is obligatory from the time that necessity for precaution begins, and continues to be applicable so long as the means and opportunity to avoid the danger remain.

---

2. In a collision at sea, happening on a bright moonlight night, and when the approaching vessel was seen by the officer in charge of the deck long before the collision occurred, the absence of a lookout *held* unimportant; it being assumed that his presence would have done nothing to avert the catastrophe.

APPEAL from the Circuit Court for the District of Maryland, affirming a decree of the District Court dismissing a libel filed by the owners of the schooner Julia against another schooner, the Dexter, in a cause of collision in Chesapeake Bay, by which the Julia was totally lost; the only difficulty in the controversy being—that usual one in causes of collision at sea—to ascertain what were the facts of the case; in other words, to settle the case; a matter rendered difficult in this cause, as in so many others of collision, by the circumstance that witnesses of one side swore in direct opposition to witnesses of the other. The adjudication, therefore, ministers nothing to juridical science.

The case, as it was assumed in both the courts below, and in this, upon the contradictory testimony adverted to, was thus:

On the night of November 17th, 1870—the night being clear and the moon shining brightly—the schooner Julia was sailing up Chesapeake Bay. The schooner Dexter was sailing down it. The wind, which was fresh, was between northwest and west-by-north, and the vessels were each sailing at the rate of eight miles an hour; approaching, therefore, rapidly. The Julia was close to the wind, though not as close as she would lie without impeding her course.

The helmsmen of the two vessels saw them respectively when three miles from each other. What their exact course *then* was, and whether likely to come together did not so plainly appear. Some evidence tended to show that, at *that* time, the vessels were not approaching end on, but that the Dexter was sailing with the wind free. But by the time that they got to within a half-mile of each other the Julia was heading north-northeast, and the Dexter south-southwest; that is to say, the vessels were approaching from exactly opposite directions; and the vessels were approaching also

end on, or nearly so. As they thus approached the Dexter ported her helm. The Julia kept on her course, till the vessels got very near, when a collision was plainly threatened. The Julia then starboarded her helm. A collision ensued, and the Julia, which was heavily laden with oysters, went to the bottom.

The only lookout on the Dexter when the Julia came in sight was the captain, who, at the time of the collision, was standing aft of the foremast.

The act of Congress " fixing certain rules and regulations for preventing collisions on the water," among its " Steering and Sailing Rules " thus provides :*

### Two Sailing-ships Meeting.

"ARTICLE 11. If two sailing-ships are meeting end on, or nearly end on, so as to involve risk of collision, the helms of both shall be put to port, so that each may pass to the port side of the other."

### Two Sailing-ships Crossing.

" ARTICLE 12. When two sailing-ships are crossing, so as to involve risk of collision, then if they have the wind on different sides, the ship with the wind on the port side shall keep out of the way of the ship with the wind on the starboard side, except in the case in which the ship with the wind on the port side is closehauled, and the other ship free; in which case the latter ship shall keep out of the way. But if they have the wind on the same side, or if one of them has the wind aft, the ship which is to windward shall keep out of the way of the ship which is to leeward."

### No Ship, under any Circumstances, to Neglect Proper Precautions.

"ARTICLE 20. Nothing in these rules shall exonerate any ship, or the owner, or master, or crew thereof, from the consequences of any neglect to carry lights or signals, or *of any neglect to keep a proper lookout,*" &c.

The District Court, as already said, decreed a dismissal

---

* 13 Stat. at Large, 60.

of the libel; the Circuit Court affirmed the decree, and the owner of the Julia took this appeal.

*Mr. R. F. Brent, for the appellant, owner of the Julia,* contended—

1. That the captain was not a competent lookout, and that if he had been so in general, he was standing on this occasion aft of the foremast, and plainly could not see; that Article 20 of the act of Congress is obligatory on vessels to keep *a proper lookout,* and that none of the other rules which the act prescribed dispensed with the obligation to do so.*

2. That this was not a case under Article 11th of the Rules to Avoid Collisions; a matter which the learned counsel attempted to establish by the evidence; arguing that the theory of the Dexter, that the vessels were approaching each other " end on," was based on evidence not trustworthy; that the Dexter, at the distance of two miles, must have been upon the course diverging to the westward and approaching the Julia, not only to the leeward as respected place, but also heading on a course bearing to the eastward of the Julia's course; and that so she was not meeting end on, but was a vessel sailing with the wind free, and subject to Article 12th; that the rules of navigation begin to apply when vessels are within ten or twelve minutes of each other; that hence the Dexter should not have put the Julia in jeopardy, or even in a reasonable fear of danger; that a vessel with the wind free should give a wide berth to one having the right of way;† that porting the helm a point or so, and then waiting (as did the Dexter) until the collision was inevitable, was not enough to exonerate one whose duty it was to give way;‡ that the Julia was closehauled and never changed her course until the collision was imminent; that a vessel with the right of way should keep her course; and that if there was error on the Julia's part in the moment

---

* The Hypodame, 6 Wallace, 224; The Ottawa, 3 Id. 268.

† Bentley v. Coyne, 4 Wallace, 509.

‡ The Shakspeare, 4 Benedict, 129; The Carroll, 8 Wallace, 306.

of collision, such error would not prevent her from recovering if otherwise not in fault.*

*Messrs. S. T. Wallis and J. H. Thomas, contra:*

The case is one really involving nothing but fact; and on the evidence the facts are plain. Two courts have found them in one way. In such a case the findings are *primâ facie* right. On the case then as found, the matter is too palpably plain for argument. The following points will occur at once, to every one, and they end all question:

1. When the vessels were half a mile apart, the Dexter saw the Julia. They were " meeting end on, or nearly end on," and under article eleven of the act of Congress the helms of both should have been put to port, so that each could pass on the port side of the other.†

2. They were not ." crossing" within the meaning of the twelfth article. That section is applicable to two vessels on different and converging tacks.

3. The Dexter ported her helm when far enough off to pass safely on either side of the Julia. This was a full compliance with her obligations under either rule.

4. The Julia starboarded her helm. If the eleventh rule was applicable, she ought to have ported.; if the twelfth, she ought to have kept her course. She violated her duty under either rule.

5. It is unimportant, in view of the facts of this case, under either of these rules, whether the Julia was closehauled or not. There was nothing to prevent her from porting, going farther to leeward, if that was her duty, or from keeping her course, if subject to the twelfth rule. If she had done either there would have been no collision.

6. The case as proved shows that the Julia was not close-hauled.

7. The error on the part of the Julia was not excusable on the ground of well-founded alarm arising from too dan-

---

* Bentley v. Coyne, 4 Wallace, 509.
† The Nichols, 7 Wallace, 656.

gerous proximity, the result of previous fault on the part of the Dexter.

8. The absence of a special lookout other than the captain on the Dexter could not have contributed to the collision. Her captain saw the Julia two miles off; saw all that could be seen, and did everything that could have been done under any circumstances.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Objection is made by the libellant that the lookout of the Dexter was insufficient, but it is unnecessary to decide the question, as it was a clear night, and as each vessel was seen by the other long before there was any necessity for precaution and in ample time before the collision to have done whatever the circumstances required to have prevented the disaster. Sufficient lookouts are required by the rules of navigation, but where it appears that the officer in charge of the deck saw the approaching vessel while she was yet so distant that no precautions to avoid a collision had become necessary, and that the want of a lookout did not and could not have contributed to the collision, the vessel omitting such a proper precaution will not be held responsible for the consequences of the disaster if in all other respects she is without fault.†

It is insisted by the libellant that the wind was from the northwest and that his schooner was closehauled. On the other hand, it is contended by the claimant that the wind was west-by-north, and he denies that the course of the schooner was such as is alleged by the libellant.

Strong doubts arise whether the wind was as far north as the point assumed by the libellant, and the proofs fail to convince the court that it was as far to the west as is supposed by the claimant. Difficulties attend the inquiry, but the better opinion is that the course of the schooner of the libellant was not as close to the wind as she would lay, without impeding her headway. Nor is it very material whether

---

* The Farragut, 10 Wallace, 337.  † Ib. 337.

she was or not when the vessels were first seen by each other, as they were then two miles apart and were moving through the water, by estimation, at the rate of fourteen or fifteen miles an hour. Satisfactory proof is exhibited that the schooner of the claimant was heading south-southwest, and whatever may have been the course of the other schooner when they were two miles apart, the proof is equally satisfactory that her course when they were a half a mile apart was exactly opposite to that of the schooner of the claimant. Evidence is certainly exhibited in the record tending to show that the course of the schooner of the libellants was east-northeast when the vessels were first seen by each other, but it is convincing that when they were only a half-mile apart they were approaching from exactly opposite directions and that the case falls within the true intent and meaning of the eleventh sailing rule prescribed by Congress.

Sailing ships are meeting end on, within the meaning of that provision, when they are approaching each other from the opposite directions or on such parallel lines as involve risk of collision on account of their proximity, and when the vessels have advanced so near to each other that the necessity for precaution to prevent such a disaster begins, which cannot be definitely defined, as it must always depend, to a certain extent, upon the speed of the respective vessels and the circumstances of the occasion.*

Rules of navigation, such as the one mentioned, are obligatory upon vessels approaching each other from the time the necessity for precaution begins and continue to be applicable as the vessels advance so long as the means and opportunity to avoid the danger remain. They do not apply to a vessel required to keep her course after the approach is so near that the collision is inevitable, and are equally inapplicable to vessels of every description while they are yet so distant from each other that measures of precaution have not become necessary to avoid a collision.

Apply the eleventh sailing-rule to the case and it is clear

---

* The Nichols, 7 Wallace, 664.

that the decree of the Circuit Court should be affirmed, as the evidence shows that the two vessels when they were half a mile apart were approaching each other in opposite directions and that the schooner of the claimant ported her helm as required by that rule; and it is equally clear that the collision would have been prevented if the schooner of the libellant had performed her duty in that regard. Instead of that she held her course until the danger became imminent, and then, by the mistake of the man at the wheel, put her helm in the wrong direction, which rendered the collision inevitable.

Attempt is made in argument to exculpate the error of the helmsman upon the ground that the danger was imminent, but such an excuse cannot be admitted as a valid one where it appears that the imminence of the peril was occasioned by the negligence, carelessness, or unskilfulness of those in charge of the vessel setting up such an apology for a violation of a plain rule of navigation.

Serious conflict exists in the testimony as to what was done by the respective vessels when they were more distant from each other, but it is not deemed necessary to give that part of the evidence much examination, as it is clear that they had ample time and opportunity to adopt every needful precaution to avoid a collision after it must have been apparent to both that they were fast approaching each other from opposite directions.

Resort is had by the libellant to that part of the evidence to show that the case falls under the twelfth sailing-rule and not under the eleventh, as contended by the claimant. Even suppose that proposition could be maintained, which is denied, it is quite clear that it would not benefit the libellant, as it is conceded that his schooner changed her course by putting her helm to starboard and that it was that error which produced the collision.

Viewed in any light it is clear that the libellant is not entitled to recover.

DECREE AFFIRMED.