## THE NON PAREILLE.[1]

### ZELLER v. THE NON PAREILLE.

*(District Court, S. D. New York. December 29, 1887.)*

1. COLLISION—RIGHT OF WAY—RISK OF COLLISION—DUTY TO YIELD.
   In the presence of danger of immediate collision there is no absolute right of way, and both of two approaching vessels are bound to give way and depart from the usual rule, if such departure will plainly avoid collision.

2. SAME—"CROSSING" AND "OVERTAKING"—INTERNATIONAL RULES—"HARBORS"—"COAST WATERS."
   Two yachts, the C. and the N., were standing up the lower bay of New York, both close-hauled on the port tack, and heading for about the same point. The C. was to windward of the N., and was heading a little more off the wind, and making more leeway than the latter. Owing to the drift of the C., their courses crossed more than their headings indicated, and each, supposing the other to be an overtaking vessel, held her own course until collision ensued. *Held*, that the C., being the windward vessel, under old rule 17, or rule 24 of the International Regulations, and the practice of seamen, should have kept out of the way. *Held, also*, that the case was one of crossing, rather than of overtaking, vessels, and that both vessels were in fault for persisting in their courses in the face of danger of collision, and the damages should therefore be divided. *Semble* the lower bay below the Narrows is part of the "coast waters" rather than of the "harbor" of New York, and is subject to the new rules of March, 30, 1885.

In Admiralty. Libel for damages.
*Craig, Shoudy & Putnam*, for libelant.
*C. Stewart Davison*, for claimant.

BROWN, J. Towards evening on the twenty-fifth September, 1887, the yachts Chessie E. and Non Pareille came in collision along the westerly edge of the channel in the lower bay, about half way between Fort Wadsworth and Hoffman island. The yachts were both sailing up the bay, close-hauled on the port tack, heading for Fort Wadsworth, or a little to the eastward of it. The wind was light from the north-west, and all were making only about three knots an hour. The Chessie E. was a small sloop-rigged yacht, drawing only from 12 to 18 inches of water. The Non Pareille was much larger, yawl-rigged, drew 11½ feet, and could be and was kept about half a point nearer the wind than the Chessie E. The Chessie E. had left Huguenot, near Prince's bay, on Staten island, and after standing over towards the Long island shore had put about and run across the channel of the bay into the shoal water towards the Staten island shore. In doing so, she had crossed some distance ahead of the course of the Non Pareille, which had shortly before come down from New York, and had turned about in the lower bay, and was coming up a little in advance of another sister yacht, the Cythera, of the same size, and so similar in appearance as to not be distinguishable except by careful attention. The Chessie E., after reaching the shoal water on the Staten island

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

shore, again came about upon the port tack, heading for about Fort Wadsworth, as above stated. Those on board of her testify that the Non Pareille was either directly astern, or a little off their starboard quarter, and overtaking the Chessie E.; that the Chessie E. held her course without change, close-hauled, and that the Non Pareille held her course a little nearer the wind, until the latter ran her jib-boom through the Chessie E.'s mainsail, doing her some damage, and greatly alarming the ladies on board.

The owner of the Cythera, on behalf of the Non Pareille, testified that he was about 200 yards distant from the Non Pareille, and about 4 points on her starboard quarter; that the Chessie E. was the overtaking boat; that at the time of her last tack she was considerably to windward and quite a distance off the port quarter of the Non Pareille, and thence gained considerably on the other boat, as she was in shallower water and in less strength of the ebb-tide; that having, however, much less draught of water, she also made much more leeway, and that through this greater drift to leeward, as well as her heading a little more off the wind, she was really crossing the Non Pareille's course by a much larger angle than by her heading she seemed; that the Chessie E. continued to gain upon the Non Pareille until she had passed out of his view abreast of the Non Pareille, and behind her sails, some 70 feet to windward of her, and he supposed she would clear; but that after three or four minutes she again appeared close under the Non Pareille's bows, and that a few moments after they came into collision.

The latter account is in the main confirmed by other witnesses who were on board the Non Pareille. Her mate, a very competent seaman, testifies that when the Chessie E. was off their port bow, and some 8 or 10 feet only distant, he thought there must be some mistake, and reported her to the captain. The latter, however, ordered the wheelsman not to give way; and the course of the Non Pareille was maintained until the collision. The Non Pareille's witnesses also testify that the wheelsman of the Chessie E., when near their bows, ported his wheel and swung the Chessie E. upon the course of the Non Pareille. They were not in a situation, however, to observe well the wheel of the Chessie E. The latter's wheelsman denies any such movement, and, as it is also improbable, I cannot accept this version.

The foregoing accounts are so diametrically opposite as to which was the overtaking vessel, and their relative positions, that each side ascribes to the other confusion and mistake as to the identity of the boats: the Non Pareille insisting that the Cythera, which was from 150 to 200 yards astern of her, was mistaken for the Non Pareille; while the Chessie E. insists that she was mistaken, as respects her alleged position astern, for another similar yacht which was in fact in the immediate vicinity, and which shortly after the collision came to her assistance. I do not find it necessary to determine the dispute in that respect, nor even which was the overtaking vessel, because I am satisfied that whether the primary duty to keep out of the way under the rules devolved upon the one or the other, each, when the danger of collision was imminent and palpa-

ble, persisted in her course, and voluntarily incurred the collision rather than yield her supposed right of way.

There is no such thing as a "right of way" to run into unnecessary collision. The rules of navigation are for the purpose of avoiding collision; not to justify either vessel incurring a collision unnecessarily. The supreme duty is to keep out of collision. The duties of each vessel are defined with reference to that object; and in the presence of immediate danger, both, under old rule 24, or new rule 23, are bound to give way and to depart from the usual rule, when adherance to that rule would inevitably bring on a collision, which a departure from the rule would plainly avoid. *The Sunnyside*, 91 U. S. 222–224; *The America*, 92 U. S. 438; *The Columbia*, 23 Blatchf. 268, 25 Fed. Rep. 844; *The Aurania*, 29 Fed. Rep. 99, 126. In this respect, the present case is a reproduction upon a small scale between sailing vessels of the principles involved in the case of *The Aurania, supra.*

I am inclined to think that this case, like that of *The Cayuga*, (14 Wall. 270,) is not a case of overtaking, but rather of *crossing*, vessels. I cannot doubt that the yacht which the owner of the Cythera saw abeam of the Non Pareille, and which disappeared behind the latter's sails, and then reappeared under her port bow, was one and the same yacht, and was the Chessie E. The observer's line of vision would have placed the Chessie E., when she thus disappeared, partly ahead of the Non Pareille; and she was then so far to windward of the latter that no one apprehended any collision. If she was really gaining upon the Non Pareille at the previous time when she was directly abeam of the latter, she would be still further distant; and so much so that I think no precautions to avoid collision could then be reasonably supposed necessary to be taken by either. The situation is to be regarded as it exists, not at some remote prior period, but at the time only when the need of precaution first arises. *The Cayuga, supra; The Dexter*, 23 Wall. 69, 75; *Steam-Ship Co.* v. *Rumball*, 21 How. 372, 384. Upon the above view, the Chessie E., when the need of precaution arose, could not have been astern of the Non Pareille, or at least not so much as two points aft of abeam, but a considerable distance from her, abreast or nearly so; but as her heading converged towards the heading of the Non Pareille, their courses were crossing, and from the greater leeway made by the Chessie E., her actual course was more crossing than it seemed. In such a situation, as was held in the case of *The Aurania*, the rule as to crossing, and not overtaking, vessels applies.

When the Chessie E. was thus slowly drawing ahead of the Non Pareielle, but drifting down upon her very much faster, the sails of the Chessie E. would for a time prevent the witnesses on board from observing the Non Pareille, unless they were looking for her; and it is remarkable that several of these witnesses did not see or remember but one yacht, except the small yacht that afterwards came to their relief. The probability seems to be that the Non Pareille was not specially noticed by several of the witnesses until the Chessie E. was drawing ahead of her, when she appeared very near, partly astern, and apparently running into the Ches-

sic E. from the drifting of the latter. Upon this view, under old rule 17, it was the duty of the Chessie E., as the vessel to windward, to keep out of the way of the Non Pareille, which was to leeward. Under the new international regulations, adopted by this country, March 30, 1885, which I am inclined to think should be held applicable to navigation below the Narrows, as being within the "coast waters" rather than in the "harbor" of New York, the same duty would devolve upon the Chessie E., under article 24, as the maneuver required by the ordinary practice of seamen under the circumstances of the case. If, in the above view, it was the primary duty of the Chessie E. to keep out of the way, that fact would not excuse the Non Pareille for persisting in her course at the last moment.

I am satisfied from the evidence that a few moments before this collision, each of these vessels could have avoided it by a slight maneuver, which each refused to make, on account of her supposed right of way. But, as I have said, there is no absolute right of way at the peril of immediate collision. The rules of navigation are administered and enforced, not with reference to the supposed rights of the vessel or her owners alone, but also with reference to the danger to the lives and property of innocent third persons. The law therefore requires that each in the presence of immediate danger shall do what it can to avoid collision.

I find that each of these yachts persisted in her course when a slight maneuver, easily made by either, might have avoided it, and that the damages and costs must therefore be divided.