## THE OSCEOLA.[1]

## THE BELLE.

### EMIGH v. THE OSCEOLA and THE BELLE.

*(District Court, S. D. New York. January 31, 1888.)*

1. **COLLISION—TWO PARALLEL TOWS—TURNING—DRIFT.**
   The two tow-boats B. and O. were making up parallel tows in the East river, the B. being 500 to 700 feet nearer the Brooklyn shore than the O. Both vessels were maintaining their positions against a strong ebb-tide. The B., having first completed her tow, attempted to turn to go out of the river, and, in so doing, struck and damaged libelant's boat on the starboard side of the O. The latter, as the B. approached, did not stop her engines and allow her tow to drift back with the tide. Both boats were libeled for the damage. *Held*, that the B. was solely in fault for the collision, as she took the responsibility of being able to effect her turn; and the libel against the O. was dismissed, without costs.

2. **SAME—ERROR IN EXTREMIS.**
   An error of judgment *in extremis* is not a fault.

In Admiralty.

*Hyland & Zabriskie*, for libelants.

*Carpenter & Mosher*, for the Osceola.

*Owen & Gray*, for the Belle.

BROWN, J. The steam-boats Belle and Osceola were making up parallel tows at about the same time in the East river, off piers 6 and 7, to go up the North river, and while preparing headed up stream against a strong ebb-tide. The Belle was nearer the Brooklyn shore, and at a distance variously estimated at from 500 to 700 feet from the line of the Osceola and her tow. Three light canal-boats, of which the boat of the libelants was one, were temporarily placed, according to custom, alongside the line of the tow of the Osceola until they could be put in the last tier, after the rest of the tow had been made up. These three boats were put upon the starboard side; that is, upon the Brooklyn side of the tow. The Belle was about 225 feet long, and having first got prepared to go up the North river, turned around towards the Osceola to go down the East river, having a helper, the Adams, on her starboard side to assist in turning quickly. The space for turning was judged sufficient. The Adams steamed ahead; the Belle backed at intervals, as was judged necessary; but she did not succeed in turning so as to avoid the libelants three outer boats along-side the Osceola's tow; but, running her stem just ahead of them, struck the three in succession, drifting down upon them with the ebb-tide. The charge in the answer of the Belle, that the tow of the Osceola was shoved by the Victoria, the helper of the Osceola, towards Brooklyn, so as to lessen the available space, is disproved; and as the Osceola is not shown to have been heading across the tide towards

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

the Brooklyn shore, though her engine was kept in motion enough merely to maintain her place, I must find that there was no material sagging of the tow from this cause towards the Brooklyn shore.

The testimony does not sufficiently explain why it was that, after the Belle got headed about straight across the river, and was then on a line abreast of the stern of the Osceola, or, possibly, 100 feet below, nearly abreast of the head tier of the tow, she did not continue rounding, instead of going nearly straight into the space above the three boats attached to the side of the Osceola's tow, as she did. It is not necessary to resort to the conjectures that might account for this; for none of them would relieve the Belle from the resposibility for the turn which she undertook to make, in full view of all the circumstances. The great preponderance of evidence shows that the Osceola did nothing to bring about the collision; and that, necessarily, makes the Belle in fault for not keeping away from the Osceola's tow, which was nearly at rest, as respects the land, though very slowly drifting down.

The only uncertainty that I find in the case, upon the weight of proof, is whether the Osceola is chargeable with fault in not having stopped the forward motion of her engines, so as to suffer her tow to drift down with the tide, when the Belle had approached so near and in such a position that collision was threatened. The case has some analogy to that of vessels at anchor, when, by paying out cable, they may assist in avoiding evident danger. Considering, however, the ability of boats like the Belle to turn quickly; the testimony of her officers on that particular; the natural expectation of the master of the Osceola that the Belle would be able to turn in time to avoid his tow until she had got quite near; and the very short period that elapsed from that time until the collision,—I do not think that the circumstances are sufficiently clear to warrant me in holding the Osceola in fault in this respect. The danger was very sudden in its occurrence. It was brought about solely by the fault of the Belle. The time for the exercise of judgment by the master was very brief, and his tow itself was cumbersome; so that a mistake in this respect, as I am inclined to think the omission to back on the part of the master was, should be treated as an excusable error of judgment *in extremis*, rather than a fault. *The Dexter*, 23 Wall. 69; *Steam-Ship Co.* v. *Rumball*, 21 How. 372, 383; *The Elizabeth Jones*, 112 U. S. 514, 526, 5 Sup. Ct. Rep. 468, and cases there cited.

The damage to the libelant's boat and furniture, with demurrage and interest, I find to be $169.50, for which the libelants are entitled to a decree against the Belle, with costs. The libel against the Osceola must be dismissed, but, under the circumstances, as I think, without costs.