### THE PROTECTOR.

### THE GOLDEN AGE.

(Circuit Court of Appeals, Second Circuit. January 14, 1902.)

### No. 5.

**1. COLLISION—ERROR IN EXTREMIS.**

An error in extremis cannot be urged in exculpation of a vessel whose prior negligence has brought about the situation in which a mistake in judgment is excusable.

**2. SAME—TUG AND TOW—PASSING DISABLED VESSEL.**

A tug passing down a stream with a schooner in tow, *held* in fault for a collision between her tow and another tug which had become disabled and was unmanageable, because she failed to see the disabled vessel, and note her condition or hear her alarm signals, until so close upon her that the collision could not be avoided.

Appeal from the District Court of the United States for the Southern District of New York.

Chas. D. Cleveland, for appellant.

Le Roy S. Gove, for the Golden Age.

Peter Alexander, for the Protector.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. The court below was of the opinion that the collision between the tug Golden Age and the schooner in tow of the tug Protector was an accident of navigation, happening without any specific fault on the part of either tug, and for that reason dismissed the libel of the schooner. Each tug alleged in its answer, and attempted to prove, that the schooner was improperly navigated, and that the collision would not have taken place if she had followed the movements of the Protector. The court below was of the opinion that these allegations were unfounded, and we are of the same opinion, being satisfied that the schooner was properly navigated. We also agree with the court below in the conclusion that the Golden Age was not at fault. The real question to be determined upon this appeal seems to be whether the Protector should be exonerated.

The collision took place in broad daylight, on Newtown creek, a stream at that part of it running east and west, and 250 feet wide. An ebb tide, setting to the westward, was running slowly. The Golden Age, a tug about 60 feet long, while backing towards mid-stream from the northerly shore, preparatory to throwing her bow around to the westerly to go down stream, caught a submerged log in her propeller, her stern being at that time about mid-channel, and distant from the drawbridge westerly something more than 150 feet. She had heard the signal indicating the intention of a vessel approaching the draw from the eastward to pass through, and when she became disabled sounded alarm whistles, and as she saw the vessel, which proved to be the Protector, entering the draw, sounded alarm whistles again. At that time the Protector was proceeding westwardly with the libelant's schooner in tow on a hawser of 60 feet. As she approached the draw she slowed down to half speed. In the meantime the Golden

Age was being carried by her previous momentum and the ebb tide slowly to the westward, and nearer to the southerly shore of the stream. The Protector did not observe the Golden Age until she was emerging from the draw. She proceeded towards her about 100 feet without changing her course or reducing her speed, and then attempted to avoid her by putting on full steam, and making a short turn to port, in order to pass between her and the southerly shore. She herself passed the Golden Age safely, but the schooner was brought into contact with the Golden Age a few feet aft of the forechains. The shock of the blow threw the schooner's bow towards the southerly side of the creek, and her bowsprit ran into a structure which pulled it out and caused other damage. The collision occurred about 300 feet to the westward of the bridge.

The testimony of the master of the Protector was to the effect that he had heard no alarm signals from the Golden Age; that he first saw the Golden Age just as the Protector got through the draw; and that he then blew two whistles, and got an alarm whistle in return, but did not discover that the Golden Age was disabled until he proceeded 100 or 125 feet further; and that he then noticed she had some sternway, but concluded to put on full speed and go to port, so as to pass between her and the southerly shore. According to his testimony, there was room for that maneuver, and no other was practicable.

After a careful study of the evidence in the record, we cannot resist the conclusion that the Golden Age should have been observed by the Protector before the latter entered the draw. Even though the Protector was not in fault because her attention was not attracted by the alarm whistles of the Golden Age, there were no obstacles to prevent the latter from being plainly seen from the time the Protector got within 100 feet of the draw. She was practically opposite the draw, and a short distance away, and had been observed moving backwards by the men upon the schooner before their vessel emerged from the draw. These men were presumably less likely to see her than those in charge of the navigation of the Protector, upon whom rested the duty of a more diligent observation. If the Protector had observed her before entering the draw, or even when entering it, she would have had sufficient opportunity, by the time she emerged from the draw, to discover her disabled condition and realize the danger of the situation. If on emerging from the draw the Protector had reversed and taken prompt measures to hold back her tow, we are satisfied the collision could have been avoided. There would probably have been a narrow margin of safety, but it is to be remembered that the tide would have been carrying the Golden Age further away from the Protector while the latter was engaged in holding back her tow. Doubtless at the time the Protector became actually aware that the Golden Age was incapacitated it was too late to take any effective measures to save collision. But the Protector must assume the consequences of failing to discover what she ought to have discovered. She cannot escape responsibility because when it was too late to avoid a collision she did all that skillful navigation required.

The case is one where a vessel in tow, without any fault on her part, has been brought by her tug into collision with another tug, and both

tugs have been relieved from responsibility, one upon a theory, which the facts seem to warrant, that she became disabled and was without fault, and the other upon the theory of an error in extremis. An error in extremis cannot be urged in exculpation of a vessel whose prior negligence has brought about the situation in which a mistake of judgment is excusable. The Dexter, 23 Wall. 69, 23 L. Ed. 84; The Elizabeth Jones, 112 U. S. 514, 5 Sup. Ct. 468, 28 L. Ed. 812.

The circumstances impose the burden upon the Protector of exonerating herself from fault by satisfactory proof that the collision was inevitable notwithstanding the exercise of proper skill and care on her part. The proofs do not satisfy that obligation.

The decree dismissing the libel as against the Golden Age is affirmed, with costs, and as to the Protector is reversed, with costs, and with instructions to the court below to decree for the libelant.