## THE STRAITS OF DOVER.

### THE BLUEFIELDS.

(Circuit Court of Appeals, Fourth Circuit. February 3, 1903.)

#### No. 447.

1 COLLISION—STEAMSHIPS CROSSING—VIOLATION OF RULES.

The ocean steamships Bluefields and Straits of Dover both *held* in fault under the evidence for a collision in Chesapeake Bay in the night, while on crossing, but nearly parallel, courses, for violation of the inland navigation rules: The Bluefields primarily, because, seeing the red light of the Straits of Dover on her starboard bow, she was the burdened vessel, and required by articles 19, 22, and 23 of the act of Congress of June 7, 1897 [U. S. Comp. St. 1901, p. 2883], to keep out of the way, to avoid crossing ahead, and to slacken speed, or stop, or reverse, if necessary, and should have ported her helm, instead of which she continued her course and speed until across the bows of the Straits of Dover; the latter because she failed to keep her course and speed as required

by article 21, or to give danger signals in accordance with article 18, rule 3, when the Bluefields persisted in her course and danger of collision was apparent, but instead ported her helm, and stopped and reversed, and without giving the signal indicating such fact required by article 28; none of which violations of the rules could be said not to have contributed to the collision, or to have been an error in extremis.

Cross-Appeals from the District Court of the United States for the District of Maryland.

J. Parker Kirlin (Convers & Kirlin, George Whitelock, and Charles R. Hickok, on the briefs), for the Straits of Dover.

Francis S. Laws (John F. Lewis, William Colton, and Thomas R. Clendinen, on the briefs), for the Bluefields.

Before SIMONTON, Circuit Judge, and BRAWLEY and WADDILL, District Judges.

WADDILL, District Judge. These are cross-appeals from the District Court of the United States for the District of Maryland in a cause of collision. The original libel was filed August 28, 1900, by the New York & Baltimore Transportation Line against the steamship Straits of Dover, and the libel of the Straits of Dover Steamship Company, Limited, against the steamship Bluefields was filed on the 31st of August, 1900. The collision occurred between the two steamships in Chesapeake Bay, about 3½ miles below Wolf Trap Lighthouse, on August 25, 1900, about 1:25 or 1:30 o'clock a. m., it being a clear night, with a smooth sea and tide ebb. The Straits of Dover was a large, ocean-going steamer, loaded with coal, drawing about 23 feet of water, and was proceeding down the Bay to the Capes; the Bluefields was a much smaller steamer, nearly light, coming up the Bay to Baltimore, the former proceeding about eight knots, and the latter about nine knots an hour. As the result of the collision, both vessels were considerably damaged. The damages to the Straits of Dover were ascertained to be $5,789.20, and to the Bluefields $8,732.35. The court below found both vessels to be in fault, decreed the damages to be divided between them, and adjudged that the owners of the Bluefields recover against the Straits of Dover a balance of $1,401.07, with interest from the 25th of August, 1900. From this decree both parties appealed.

Numerous faults were assigned by the vessels against each other, respectively, in which each, in effect, averred that the collision was solely the fault of the other. The case of the Bluefields, as stated in its answer and cross-libel, is:

"At about 1:10 a. m. by the Bluefields' time, her lookout called out, 'A steamship on the starboard bow.' The Bluefields' course was north half east. The pilot saw the vessel on the starboard bow about the same time the lookout did, the green lights being plainly visible on each vessel. The vessels continued this course until the Straits of Dover came within half a mile of the Bluefields, when the Straits of Dover changed her course, exhibiting her port light, whereupon the Bluefields gave a single whistle, easily heard several miles. The mate ordered hard aport. There was no response from the Straits of Dover, and the Bluefields continued her course, and in about one minute repeated the single blast, when suddenly the Straits of Dover put her helm to starboard and struck the Bluefields, showing both her side lights. When the vessel struck, the Bluefields stopped her engines."

And of the Straits of Dover, as stated in her cross-libel and answer, is:

"At about 1:05, August 25, 1900, the Straits of Dover, with Bay pilot and chief mate on the bridge, etc., was going down the Chesapeake Bay about three miles below Wolf Trap Light, when a masthead light was reported seven or eight miles off, about a point and a half on the port bow. Shortly after the green light was observed, continuing with same bearing. The Straits of Dover kept her course and speed until there was a risk of collision, since the other vessel did not give way; then the Straits of Dover put her helm about halfway to port, and blew a blast, and engines rung to stand by. There was no answer, and as the Bluefields still kept on and did not give way, the engines of the Straits of Dover were stopped, and put full speed astern. The Bluefields appeared to be then under a starboard helm, and suddenly appeared to change to a port helm, and swept around, blowing one whistle just before she ran into the bow of the Straits of Dover."

A great mass of evidence was taken as to just how the collision came about; and it may be said, in passing, that the conflict is greater than usually exists, even in this class of cases. It is not deemed necessary to enter into a lengthy discussion of the same, further than to say, after mature consideration, no reason has been found' for arriving at a different conclusion upon the facts than that reached by the learned judge of the District Court, who heard and saw the witnesses, and was in that way better enabled to determine the relative value of their several statements. In the judgment of the court below, the collision was attributable primarily to the Bluefields, whether treating the case as one of meeting or crossing, though the court considered it a crossing case. Article 18, rule 1, of Act of Congress, approved June 7, 1897 (30 Stat. 101 [U. S. Comp. St. 1901, p. 2881]), provides what shall be done when vessels are meeting end on, or nearly so, in such manner as to involve risk of collision; that is, that either vessel shall give to the other one short and distinct blast of the whistle, which the other shall answer promptly in like manner, and thereupon such vessels shall pass on the port side of each other. The America, 92 U. S. 432, 23 L. Ed. 724; Marsden on Collisions (4th Ed.) p. 458; Hughes' Ad., 237-8-9. That the Bluefields did not comply with this requirement is apparent. The Straits of Dover exhibited her red light to the Bluefields at least a mile away, and, in the opinion of the lower court, when at a much further distance; and had the Bluefields ported, and continued so to do, there could have been no risk of collision, but instead, as found by the lower court to be a fact, the Bluefields continued her full speed, and kept her course until she ran across the bow of the Straits of Dover; and not until then, under a hard port helm, attempted to avoid collision by changing her course. The Bluefields earnestly insists that she ported earlier, and at the time that the red light of the Straits of Dover was exhibited to her; but that the Straits of Dover thereafter suddenly starboarded, shutting in her red and exhibiting her green light, and collided with her on her port bow. This contention is not borne out by the evidence. It does not appear that the Straits of Dover, after porting and exhibiting her red light, again starboarded as claimed. The Bluefields, as found by the lower court, in which finding of fact we concur, attempted, with the Straits of Dover on her starboard side, to cross her bow, which largely con-

tributed to bringing about the collision. Articles 19, 21, 22, 23, rule 3, arts. 18, 26, of the act of June 7, 1897, supra, prescribe the rules for the avoidance of collisions between steam vessels in the position in which these were.

"Art. 19. When two steam-vessels are crossing, so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other."

"Art. 21. Where, by any of these rules, one of the two vessels is to keep out of the way, the other shall keep her course and speed."

"Art. 22. Every vessel which is directed by these rules to keep out of the way of another vessel shall, if the circumstances of the case admit, avoid crossing ahead of the other."

"Art. 23. Every steam-vessel which is directed by these rules to keep out of the way of another vessel shall, on approaching her, if necessary, slacken her speed or stop or reverse."

"Art. 18, Rule 3. If, when steam-vessels are approaching each other, either vessel fails to understand the course or intention of the other, from any cause, the vessel so in doubt shall immediately signify the same by giving several short and rapid blasts, not less than four, of the steam whistle."

"Art. 28. When vessels are in sight of one another a steam vessel under way whose engines are going at full speed astern shall indicate that fact by three short blasts of the steam-whistle."

The obligation imposed to obey these rules is imperative, and those violating them, except under circumstances contemplated by the rules, must bear the consequences if damages ensue. It was the duty of the Bluefields, with the Straits of Dover on her starboard side, to have kept out of the way of the other steamer. The Breakwater, 155 U. S. 252, 15 Sup. Ct. 99, 39 L. Ed. 139; The Delaware, 161 U. S. 459–466, 16 Sup. Ct. 516, 40 L. Ed. 771; The Luckenbach, 1 C. C. A. 489, 50 Fed. 129–134; The Chittagong [1901] App. Cas. 597. And likewise to avoid a collision with her by crossing ahead of her. The Excelsior (D. C.) 102 Fed. 652–655; Marsden on Collisions (4th Ed.) p. 483. And upon approaching her, if necessary, to slacken her speed, or stop or reverse. The New York, 175 U. S. 187–201, 20 Sup. Ct. 67, 44 L. Ed. 126; The Albert Dumois, 177 U. S. 240, 20 Sup. Ct. 595, 44 L. Ed. 751. Instead of taking these plain and simple precautions prescribed for the government of her conduct, the Bluefields pursued a course of her own, which resulted in the collision. The Bluefields should have avoided the risk of collision, and, for failure so to do, is clearly liable. The presence of danger, or anticipated danger, was enough to admonish her of the necessity of complying with the rules of navigation. The Carroll, 8 Wall. 302–305, 19 L. Ed. 392; The New York, 175 U. S. 187–207, 20 Sup. Ct. 67, 44 L. Ed. 126; Steamship Co. v. Low, 50 C. C. A. 473, 112 Fed. 161, 162, 172; The Richmond (D. C.) 114 Fed. 208.

Coming to the consideration of the question of the liability of the Straits of Dover, by reason of the faults alleged against her, we find that the District Court held her also liable for failure to give danger signals, upon the green lights of the Bluefields bearing upon her port bow for such length of time, immediately preceding the collision, as to make it apparent that the Bluefields was crossing her bow and that there was great danger of collision; and also because, when in such condition, she blew one whistle, stopped her engines, and in

about three minutes, without getting a reply from the Bluefields, or understanding her intentions, reversed full speed astern. We do not understand it is denied that, under the circumstances indicated, the Straits of Dover so acted. The Straits of Dover, in the position stated, was the favored vessel, and under article 21, supra, was required to keep her course and speed; and, upon failure to understand the course or intention of the Bluefields, should have immediately signified the same by giving several short and rapid blasts, not less than four, of her steam whistle (rule 3, art. 18); or, upon reversing her engines and putting the same full speed astern, she should have indicated the fact by three short blasts of her whistle (article 28), so as to warn the Bluefields of her movements. The Straits of Dover seems clearly to have erred in the three particulars stated. She should have kept her course and speed, unless in case of imminent danger, and the Bluefields had the right to assume that she would do so (The Britannia, 153 U. S. 130, 14 Sup. Ct. 795, 38 L. Ed. 660; The Delaware, 161 U. S. 459–469, 16 Sup. Ct. 516, 40 L. Ed. 771; The Albert Dumois, 177 U. S. 240–250, 20 Sup. Ct. 595, 44 L. Ed. 751; The Mary Powell, 34 C. C. A. 421, 92 Fed. 408; Hughes' Ad. 245); and, in case of emergency justifying a departure therefrom, should have followed strictly the rules governing such maneuver, which she failed to do; and, upon reversing her engines, she should have also complied promptly with the rules governing such movement; otherwise she, herself, by unexpectedly moving backwards, might have cut off the only escape the Bluefields would have had, had she, too, discharged her duty in the emergency in which the two vessels were then placed, and by her failure to give danger signals utterly misled the Bluefields as to her movements. The Dexter, 23 Wall. 69, 23 L. Ed. 84; Belden v. Chase, 150 U. S. 674–699, 14 Sup. Ct. 264, 37 L. Ed. 1218, and cases there cited.

The learned counsel for the Straits of Dover insisted with much earnestness, and argued with great ability, to show that the Straits of Dover, conceding the faults to be as found against her, should nevertheless be held blameless, first, because it appeared that her negligence, if any, in no way contributed to the collision, and, if it did, it was an error in extremis for which liability should not attach; and that the Bluefields, having brought about the collision, and its faults being obvious and inexcusable, and enough within themselves to account for the catastrophe, all doubts regarding the management of the Bluefields should be resolved against her, and those of the Straits of Dover solved in her favor. The propositions of law involved in these several contentions may be conceded. It is undoubtedly true that all presumptions should be solved against the vessel primarily liable and clearly in fault, and doubts resolved in favor of the one secondarily responsible, as should errors in extremis be excused, and no liability attach to acts of negligence not contributing to bring about the cause of disaster; but it cannot be said in this case either that the failure of the Straits of Dover to follow the rules prescribed for its conduct, on the occasion in question, was an error in extremis, or that it did not in part bring about the disastrous results that followed. The navigators of the Straits of Dover

observed the green light of the Bluefields bearing on her port bow, in such manner as to make it apparent that the Bluefields was crossing the bow of the Straits of Dover, and was persisting in this course, and that there was great danger of collision, and in this condition the Straits of Dover neither continued her speed and course, nor gave to the Bluefields the danger signals required to be given, but, on the contrary, blew one whistle, stopped her engines, and in about three minutes reversed full speed astern; and it will not do now to rely upon the fact that, because their red light was exposed to the Bluefields, they had a right to suppose that she too would perform her duty under such circumstances, and port her wheel, exhibiting in proper time her red light, so as to pass red to red. The conduct of those navigating the Straits of Dover shows that at the time they did not so consider, but, on the contrary, instead of proceeding on their course and at their speed, which might have prevented the disaster, or relieved them from liability, in apprehension of the danger which they felt existed, they adopted the opposite course of stopping, and subsequently reversing her engines full speed astern, and utterly failed to comply with the requirements of the law in making either maneuver. It cannot be said that if the Straits of Dover, by reason of the persistency of the Bluefields in crossing her bow, had given danger signals, such timely warning to the Bluefields, showing that her movements were not understood, would not have averted disaster. The violation of the rules of navigation by the Straits of Dover in the three particulars mentioned, being clearly established, indeed admitted, she cannot under the circumstances of this case be held blameless. Nor can it be said that her conduct did not in part contribute to bring about the disaster that followed. Every consideration requires that these rules should be strictly observed by those for the government of whose conduct they were prescribed, and any departure therefrom should not be lightly overlooked or passed by. To do so would destroy the symmetry of the whole, and would place questions affecting the navigation of ships, now well settled and certain, in utter chaos and confusion. The taking of risks and chances in these matters should be discouraged.

Finding no error in the determination of facts or the adjudication of principles of law announced by the decision of the lower court, the same is affirmed; each party to pay their own costs. Affirmed.