## THE LAKE CALVENIA. THE H. H. ROGERS. UNITED STATES v. STANDARD OIL CO. OF NEW JERSEY.

(Circuit Court of Appeals, Fourth Circuit. October 21, 1924.)

No. 2230.

Collision ☞102—Meeting steamships both held in fault.

Two steamships, meeting at night in a channel a mile wide, both *held* in fault for a collision between them, one for unnecessarily repeating the passing signal when the vessels were 1,000 feet apart, and after an agreement to pass starboard to starboard had been made, which signal was misunderstood by the other, and the latter for then going to starboard and attempting to cross the course of the other, when so close as to render that maneuver dangerous, and thereby bringing about the collision.

Cross-Appeals from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Suit in admiralty for collision by the United States, owner of the Steamship Lake Calvenia, against the Steamship H. H. Rogers, of which the Standard Oil Company of New Jersey was claimant, with cross-libel. From a decree holding both vessels in fault and dividing damages, both parties appeal. Affirmed.

For opinion below, see 279 F. 763.

J. Frank Staley, Sp. Asst. Atty. Gen., and H. H. Rumble, Sp. Asst. U. S. Atty., of Norfolk, Va. (H. T. Atkins, Sp. Asst. Atty. Gen., on the brief), for the United States.

William H. McGrann, of New York City, and Edward R. Baird, Jr., of Norfolk, Va. (Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, and Baird, White & Lanning, of Norfolk, Va., on the brief), for Standard Oil Co.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. These are cross-appeals in admiralty, involving the liability for a collision between the steamship Lake Calvenia and the steamship H. H. Rogers, at the entrance of Hampton Roads on the 10th of April, 1920. On the evening in question, about 9:30 o'clock, the Lake Calvenia, a vessel of 2,364 tons gross, was inward bound en route from New York to Norfolk, in ballast, and the steamship H. H. Rogers, a twin screw tank steamer of 9,825 tons gross, outward bound from Sewell's Point to Tampico, Mexico, also in ballast. Both vessels were in charge of Virginia pilots. The Lake Calvenia passed Thimble

Shoal Light well to the northward of mid-channel. On that side of the channel was anchored, some three-quarters of a mile to the westward, a government transport, brightly lighted, laden with ammunition, and some 500 to 1,000 feet further west, and beyond and nearer to mid-channel, a four-masted schooner was at anchor, laden to her water line. In these circumstances, the channel being about a mile wide for ships of the draft of those here, the Lake Calvenia changed her course, so as to pass well to the southward of both anchored vessels. About this time, the H. H. Rogers was passing the rip-raps, and set her course slightly to the southward of midchannel to pass buoys Nos. 17 and 15 on her starboardside.

The vessels each sighted the other about the same time, approximately two miles away, and each claimed to have sounded two or three times the appropriate and customary signal, which, if acquiesced in, would have effected a port to port passage. They each admit having heard signals, one from the other, when the vessels were about one mile apart; the Lake Calvenia having crossed the course of the H. H. Rogers and gotten to a position slightly on her starboard bow. A signal of two blasts was then given and answered between the vessels to effect a starboard passage, which was agreed upon, and they straightened out on their respective courses, being at the time a little more than half a mile apart; the Lake Calvenia showing her range and green lights on a course at least two points on the H. H. Rogers' starboard bow. While thus proceeding, the master of the H. H. Rogers, from the port side of the bridge of his ship and some distance from the pilot, and without consultation with him, sounded two blasts of his whistle, as he claimed "to make sure" the other vessel understood the two blast signal formerly given, and starboarded his helm "to give a little more room." The navigator of the Lake Calvenia understood this last as a one, instead of a two, blast signal, which indicated to him a port to port passage, and he observed the bow of the H. H. Rogers veer slightly to starboard. The Lake Calvenia immediately, and at a time when the vessels were approximately 1,000 feet part, put her helm to port, and proceeded directly across the path of the oncoming vessel. This maneuver was had in the hope of avoiding a possible collision, which then seemed inevitable, and quickly followed.

Each vessel, in these circumstances, sought to place the responsibility for the collision

2 F.(2d)—27

solely on the other, and much testimony was taken, with the usual conflicts in this class of cases accentuated. The District Judge held each ship in fault, the H. H. Rogers for inexcusably sounding the two blasts she admitted giving after the starboard passage was agreed to and entered upon, and the Lake Calvenia for adopting the course it pursued upon the H. H. Rogers giving the improper signal, understood by it to be a one and not a two blast signal; the judge's conclusion being that, in the circumstances, the Lake Calvenia did the one thing she should not have done, that is, answered the one blast signal with one blast, put her helm to port, and her head to starboard, making the collision almost inevitable, instead of either sounding danger signals and proceeding full speed ahead on her course, or appropriate reversing and backing signals and proceeding full speed astern. The Straits of Dover (C. C. A. 4th Cir.) 120 F. 900, 58 C. C. A. 86.

The District Court further held that, while the vessels were close together, the emergency was not such that prudent and seamanlike navigation would not have averted the collision, taking into account the passing distance between the ships, and hence that the Lake Calvenia should not escape liability entirely for her faults upon the theory of error in extremis. The court likewise deemed the course of the Lake Calvenia in crossing to the southward side of the channel imprudent, but which did not directly contribute to the actual bringing about of the accident.

The collision proved a most serious one, certainly so far as the Lake Calvenia was concerned. She sank almost immediately after being struck, and could not be salved, and proved a total loss. Her value was $575,000. The damage done to the H. H. Rogers was $27,808.45. Under the court's decision, appealed from by both sides, the damages were divided between the two vessels, and a decree entered awarding the government $273,595.78, with interest and costs as therein specified.

The assignments of error by the respective parties raise many questions for the consideration of the court; but, as we view the case, it turns solely upon whether or not the District Court determined correctly the question of fault between the two ships—that is, that each ship was at fault and liable for bringing about the collision, and that the Lake Calvenia was not exonerated because of error in extremis in what she did that effect-

ed this result. The case thus turns entirely upon the correct determination of the question of fact involved therein.

We have given much consideration to the subject, as well because of its importance to the parties, as because many of the issues presented are sharply drawn, and it is particularly difficult to arrive at a correct understanding of the facts. Considering the same from every viewpoint, we are convinced that the judge of the District Court met and correctly passed upon its essential features, and his findings of fact and conclusions of law, as enunciated in his opinion filed in the record and reported in 279 F. 763, should be accepted, and we find no reason to change or add to what he has said, as his review of the case seems to us entirely satisfactory, and fully and comprehensively expressed.

The decision of the District Court is affirmed, with costs to the appellant.

Affirmed.