## THE NATCHEZ.

NEW ORLEANS NAV. CO., Limited, v. ST. LOUIS & N. O. ANCHOR LINE.

(Circuit Court of Appeals, Fifth Circuit. December 22, 1896.)

### No. 475.

1. COLLISION—CREDIBILITY OF WITNESSES.
     In cases of conflict as to the movements of vessels, superior weight, other things being equal, is to be given to the testimony of witnesses as to the movements of their own vessel over that of witnesses on other moving vessels.
2. APPEAL—ASSIGNMENTS OF ERROR.
     An assignment that the court erred in allowing certain claims, which the evidence adduced by libelant did not substantiate, is too general to be considered.
3. SAME—REFUSAL OF NEW TRIAL.
     The refusal of a new trial is not assignable as error in the federal court.
4. INTEREST—DEMURRAGE.
     In cases of collision, where damages are given for detention, interest may be allowed thereon as part of such damage.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

This was a libel in rem by the St. Louis & New Orleans Anchor Line against the steamboat Natchez (the New Orleans Navigation

Company, Limited, claimant) to recover damages resulting from a collision. The district court rendered a decree for the libelant, from which the claimant has appealed.

M. Marks, for appellant.

W. W. Howe, W. B. Spence, and C. P. Cocke, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

PARDEE, Circuit Judge. This is a libel for damages in a case of collision between the steamboat Arkansas City and the steamboat Natchez. The district court adjudged the Natchez in fault, and awarded damages therefor, and the claimant of the steamboat Natchez has appealed. The claimant's answer to the libel gives the following account of the collision:

"On the 12th day of July, 1893, the steamboat Natchez left the port of New Orleans about 5 o'clock p. m., bound for the port of Vicksburg, having on board a cargo of merchandise. That the said steamboat was then, and continued to be during her voyage, in all respects seaworthy, and properly manned, equipped, and supplied. That the steamboat Arkansas City left the port of New Orleans about the same time, and both boats proceeded up the Mississippi river. That the Natchez made a landing, and, while at such landing, the Arkansas City passed her. That, after making such landing, the Natchez proceeded on her voyage, and kept gaining on the Arkansas City. That both boats, as is usual to avoid strong currents, crossed and recrossed the river, both boats being on the same side of the river, and crossing and recrossing the river at about the same time; the Natchez being in the rear of, and gaining on, the Arkansas City. That about 11 o'clock p. m. on the night of July 12, 1893, the steamboat Natchez having then passed, and being on the upper side or end of, the point known as 'College Point,' was laying and running parallel with the shore about seventy-five yards out in the river. That the steamboat Arkansas City was at that time about seventy-five yards in advance of the Natchez, and more than one hundred yards to the larboard or left of the Natchez; so that there was ample room for the Natchez to keep on her course and pass the Arkansas City, as she had a right to do. That the pilot on watch on the steamboat Natchez blew one whistle, thus indicating to the pilot on watch on the Arkansas City that the Natchez would pass to the right or starboard side. That the pilot on watch on the Arkansas City, intending to prevent the Natchez from passing the Arkansas, did not respond to the signal given him, as he should have done, but changed the course of the Arkansas City to the starboard, and, after some time had elapsed, blew three short whistles, the signals of danger. That immediately thereafter the Natchez was stopped and backed, and never stopped backing until it was no longer necessary to back, but that her headway was such that it could not for some time be checked, and she continued for that time to move up the river; and the Arkansas City, having, as aforesaid, changed her course to the starboard, closed in on the Natchez, striking the Natchez at her forecastle chains, with the forward fender of the starboard water wheel of the Arkansas City, and breaking said fender. That thereupon the Arkansas City, working both wheels, went on and struck her bow in the bank."

Taking this statement to be true,—and the claimant is estopped from denying it,—there is no doubt that the Natchez (the overtaking steamboat) was in fault, unless, after the signal of the Natchez indicating her desire to pass to the starboard of the Arkansas City, the course of the Arkansas City was changed to the starboard, so as to prevent the Natchez from passing. On this point the evidence

of the master and pilot of the Arkansas City is positive that no change of course was made on the part of the Arkansas City after the Natchez signaled to pass. On the other hand, the master and pilot and some other officials of the Natchez are positive that such change in the course of the Arkansas City was made. The trial judge evidently found the preponderance of evidence to be in favor of the Arkansas City, and we think properly, because, as is well settled in case of conflict of witnesses as to the disputed movement of vessels in collision, actual or threatening, superior weight (other things being even) is given to the testimony of a vessel's own men as to her movements over that of those witnesses on other moving vessels. McNally v. Meyer, Fed. Cas. No. 8,909; The Sam Sloan, 65 Fed. 125–127; and numerous cases there cited. In McNally v. Meyer, supra, Judge Blatchford (afterwards Mr. Justice Blatchford) well says:

"Daily experience in the trial of collision cases shows that nothing is more unreliable than testimony from those on one moving vessel as to the absolute actions on another moving vessel. The irresistible propensity is to regard your own vessel as stationary with reference to the other vessel, and to attribute all deflecting movement to the other vessel. The other vessel, a moving object, is alone in the eye. Unmoving objects are not kept in view as tests of movements in the vessels. The testimony which results is honest, but illusory, deceptive, and unreliable. The only safe reliance, as a general rule, as to the course and deflections of a vessel, is the testimony of those who hold in their hands her wheel or her tiller. A change of bearing between two vessels, which may be the result of three things,—a change of course wholly by one, a change of course wholly by the other, or a change of course by both,—can give no reliable indication to an observer on either vessel who judges merely from looking at the other vessel as to which one of the three things has produced such change of bearing."

This disposes of the first assignment of error.

The second assignment is that the court erred in allowing certain claims in the libel which evidence adduced by libelant did not substantiate. The general character of this assignment relieves us of any necessity to consider it.

The third assignment is that the court below erred in refusing a new trial. This cannot be noticed.

The fourth assignment is that the court below erred in holding that the overtaking boat was running too close at the time she gave the signal to pass. We find no such ruling in the record, and none can be inferred, except, perhaps, from the general decree against claimant.

The fifth assignment of error is that the court "erred in allowing interest to libelant from the time of filing the libel on the judgment and decree rendered." It has been held by this court in Railroad Co. v. Schneider, 13 U. S. App. 655, 8 C. C. A. 571, and 60 Fed. 210, that a verdict assessing unliquidated damages, and allowing interest from judicial demand, is sufficiently specific where it appears clear such interest is allowed as part of the damages. The damages allowed in this case are, in the main, liquidated damages, to wit, specific sums of money actually paid for materials and repairs prior to the filing of the libel, and only one item in the

account allowed can be classed as unliquidated, and that is for detention or demurrage of the steamboat Arkansas City for two days, the allowance of which is made the ground of the sixth and last assignment of error.

The claim in the libel is for three days' detention on the up-trip, $263 per day. This damage was specifically and sufficiently proved, and, from the view the district court evidently took of the case, was properly allowed, and interest thereon is in the nature of, and was intended as, damages. On the whole record, we find no reversible error, and therefore the decree of the district court is affirmed.