HARRISON v. HUGHES et al.

(District Court, D. Delaware. February 5, 1903.)

No. 594.

1. CANCELLATION OF CHARTER PARTY—LIBEL BY MASTER—DAMAGES.

A libelant, as master of a vessel, should not be allowed to recover damages for loss resulting to its owners from the cancellation of a charter party, where the libel does not claim damages therefor, or mention such charter party; but the court may in such case allow an amendment of the interlocutory decree and, if necessary, refer the case to a commissioner to deal with the subject-matter of such amendment.

2. SAME—DETENTION OF VESSEL—INTEREST.

Interest can in the sound discretion of the court be allowed as part of the damages for the detention of a vessel for repairs where the libelant is entitled to damages on account of such detention, and should be allowed in the absence of special circumstances rendering it inequitable.

(Syllabus by the Court.)

In Admiralty. On exceptions to report of Commissioner.

John F. Lewis and Francis C. Adler, for libelant.

Harry Emmons and Anthony Higgins, for respondent.

BRADFORD, District Judge. The steamship Glenochil stranded on the new breakwater off Lewes in this district, November 30, 1897, thereby receiving much damage. This court, having held that the stranding was due to the negligence of both the steamship and the respondents, (110 Fed. 545) made an interlocutory decree that the libelant recover from the respondents one half of the damages and costs, and referred the case to a commissioner to ascertain, compute and report the same to the court. The commissioner has made his report allowing as part of the damages $13,000 for "demurrage and portage charges for the detention of the Glenochil as a result of the stranding, as agreed upon by counsel", together with interest thereon at the rate of six per cent., and also $763.99 for "loss arising from the difference of freight between the old and new charter party." The first item, so far as it relates to what is termed "demurrage" represents, not demurrage in its proper sense, but damages in the nature of demurrage for the loss of the beneficial use of the steamship during the period she was undergoing repairs. The second item represents damage for the loss by cancellation of the charter party under which the steamship was sailing at the time of the catastrophe, and is supposed to be equal to the difference between the freight she would have earned, had the stranding not occurred, and the freight she did earn or could have earned under a subsequent charter party executed after her repairs had been completed; freights having fallen after the

execution of the first and before the execution of the second charter party. The respondents have excepted to the findings and report of the commissioner, as follows:

"1. That the commissioner erred in awarding libelant the sum of seven hundred and sixty-three dollars and ninety-nine cents for loss arising from the difference of freight between the old and new charter party.

2. That the commissioner erred in allowing interest as a part of the damages on the claim for demurrage and portage charges for the detention of the Glenochil as a result of the stranding."

The damages claimed in the libel are set forth as follows:

"Sixth: The damages sustained by the said steamship by reason of the stranding aforesaid were very great. Her stem was broken, a large hole was stove in her port bow, and about forty plates were broken or damaged, several frames or ribs were broken, lower stringer and a large amount of other damage. A claim for salvage was made against the said steamship, and the sum of twelve thousand five hundred dollars has been awarded against her by the New York Board of Marine Underwriters, and the total damage, including the salvage due by the vessel, will amount to about fifty thousand dollars, to which is to be added damages for the detention of the said steamship from November thirtieth, 1897, the date of the stranding, to the time that her repairs will be completed, which as near as can be estimated at the present will be about March first, 1898, and the libelant alleges that the said steamship is entitled to be paid for such detention the sum of one hundred and fifty dollars per day, making a total for the ninety days, actual and expected detention, of about thirteen thousand five hundred dollars, making the total damages received by the said steamship from the stranding aforesaid the sum of about sixty-three thousand, five hundred dollars."

The damages thus claimed in the libel do not include, but on the contrary exclude, any claim for loss by reason of a cancellation of the charter party under which the steamship was proceeding at the time of the accident. Objection was taken on behalf of the respondents to the introduction of evidence on that subject during the examination of the witness Solari as follows:

"Q. 384. What was the loss in dollars and cents to the 'Glenochil' by reason of the cancellation of the charter of November third?

Mr. Emmons: We object to that. The question here is, what loss did she sustain by reason of the collision."

The objection was overruled and evidence on the point was received. There is nothing in the libel alluding to or hinting at any cancellation of a charter party. Any loss occasioned thereby is strictly special damage which should have been alleged as well as proved. Courts of admiralty, it is true, are liberal in their treatment of pleadings, and averse to sustaining technical objections calculated to prevent the determination of causes according to their essential merits. But this liberality should be restrained within proper limits, and not so exercised as to prejudice either of the parties to a cause. If the libelant at the time of filing his libel intended to charge the respondents with the amount of loss caused by the cancellation of a charter party he should have set forth in his libel his claim in that regard. There is nothing in the libel which could advise or suggest to the respondents that such a claim would be made. They were entitled under the elementary rules of pleading to be informed at least of the character of any special damage for which the libelant sought compensation. The omission of any reference in the libel to loss

resulting from the cancellation of a charter party is not, however, an incurable defect. It may be supplied by a proper amendment. Leave is granted to the libelant, on two days' notice to the proctors of the respondents, to submit a proper amendment. If allowed, it may or may not be found necessary to refer the case again to the commissioner to deal with the subject matter of the amendment. If such amendment be not submitted to the court within ten days the first exception will be sustained.

The second exception relates generally to the allowance of interest by way of damages on the amount awarded for detention of the steamship and for portage charges. With respect to portage charges I can perceive no reason why interest should not be allowed, under the circumstances of this case, as part of the damages. The main contention on the part of the respondents in support of this exception relates to the allowance of interest by way of damages on the amount awarded for detention of the steamship during the period of her repairs, or on "the claim for demurrage" in the language of counsel. The commissioner allowed interest as "part of said damages". While there are some cases to the contrary, the decided preponderance of authority supports the proposition that interest can be allowed by way of damages in such a case in the sound discretion of the court, and should be allowed in the absence of special circumstances rendering it inequitable. The M. Kalbfleisch (D. C.) 59 Fed. 198; The Natchez, 24 C. C. A. 49, 78 Fed. 183; Brent v. Thornton, 45 C. C. A. 214, 106 Fed. 35; The Jas. A. Dumont (D. C.) 34 Fed. 428; The Bulgaria (D. C.) 83 Fed. 312. It is urged on the part of the respondents that the libelant has been guilty of such delay in bringing this cause to a hearing as to make it unjust to include interest in the damages for detention of the steamship. On careful examination of the record, in connection with certain correspondence between the proctors for the respective parties which, without objection by the respondents, was read at the hearing and handed to the court, I am not prepared to hold that there was such undue delay on the part of the libelant as to disentitle him to interest. The second exception must, therefore, be overruled.