The FIRST NATIONAL BANK OF CHICAGO, Executor of the Will of Wayne J. Hart, Deceased, Plaintiff-Appellant,

v.

MATERIAL SERVICE CORPORATION, a corporation, Defendant-Appellee.

No. 75–2115.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1976.

Decided Nov. 5, 1976.

Rehearing Denied Dec. 15, 1976.

---

912

Marshall E. LeSueur, Chicago, Ill., for plaintiff-appellant.

Stephen A. Milwid, Chicago, Ill., for defendant-appellee.

Before CUMMINGS and BAUER, Circuit Judges, and JAMESON, Senior District Judge.*

BAUER, Circuit Judge.

The disposition of this admiralty collision case depends on whether the rule of *The Pennsylvania*, 86 U.S. 125, 19 Wall. 125, 22 L.Ed. 148 (1873), should have been applied by the district court. The rule shifts the burden of proof in collision cases to the defendant if its vessel was in violation of a statutory navigation rule at the time of the collision.

I

On April 20, 1973, at about 8 p. m., appellant's decedent, Wayne J. Hart, was approaching the Congress Street Bridge in the South Branch of the Chicago River from the south in his 16-foot long motorboat. The defendant's barge tow, consisting of two barges, each 195-feet long and 35-feet wide, lashed abreast of each other and being pushed by a towboat, was traveling southbound to Lockport, Illinois. When the pilot house of the towboat was about 50 feet north of the Congress Street Bridge, the tow's pilot saw the red (port) running light of the decedent's boat approximately 800 to 1000 feet away. He blew his whistle once to signal that he would direct his course to starboard for a port-to-port passing. As the pilot steered starboard, he noticed the green (starboard) light of the decedent's boat as well as the red (port) light. This indicated that the small boat was proceeding directly toward the tow. The pilot then steered hard to starboard, eventually driving the bow of the starboard barge into the west wall of the river about 40 feet south of the Congress Street Bridge. Seconds later the decedent's boat crashed into the bow of the port barge and capsized, throwing its occupants into the water. The

* The Hon. William J. Jameson, United States District Court for the District of Montana, is sitting by designation.

decedent and one of his passengers drowned.

At the time of the collision, the barge had red and green directional lights at the corners of its bow and a flashing amber light at its center head. The towboat had red and green directional lights on the roof of its pilot house. The forward-facing white light on its pilot house was not illuminated. The motorboat was illuminated by a combination red and green light on its bow and a white light mounted atop a pole in the center of its stern.

A few moments prior to the collision, the mate who was acting as a lookout on the bow of the port barge started to walk back to the towboat to obtain a jackstaff, a device used to gauge the wind's velocity and direction. The mate did not see the decedent's boat before the collision.

Plaintiff, the executor of the decedent's estate, filed this action in admiralty for damages arising from the decedent's wrongful death allegedly caused by the defendant's violation of maritime duties, an action recognized by the Supreme Court in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The case was tried by the district court without a jury. Following the receipt of evidence, the court entered judgment for the defendant after finding that the plaintiff bore the burden of proving that the defendant's negligence was a contributing cause of the accident; that the burden was not met; and that the plaintiff's negligence was the sole cause of the accident.

On appeal, the plaintiff argues that the district court erred by placing the burden of proof on the plaintiff. It maintains that the rule of *The Pennsylvania* should have been applied to shift the burden of proof to the defendant because the defendant was operating its vessel at the time of the collision in violation of the applicable navigation rules. As a consequence, plaintiff asks us to reverse the decision below because the defendant did not present evidence to meet the strict burden of proof mandated by *The Pennsylvania* rule.

## II

■ As this Court noted in *Complaint of Wasson*, 495 F.2d 571, 580 (7th Cir. 1974): "The *Pennsylvania* rule is long-settled law and should be strictly applied." In *The Pennsylvania* the Supreme Court stated the rule as follows:

"The liability for damages is upon the ship or ships whose fault caused the injury. But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute." 86 U.S. at 136, 19 Wall. at 136, 22 L.Ed. 148.

■ The statutory rules "intended to prevent collisions" that the Supreme Court alluded to in *The Pennsylvania* are the four sets of navigation rules in the United States Code and the "Pilot Rules" issued by the Coast Guard to supplement the statutory enactments. The navigation rules are the Great Lakes Rules, 33 U.S.C. §§ 241–95, applicable to vessels on those lakes and their connecting and tributary waters; the Western Rivers Rules, 33 U.S.C. §§ 301–56, applicable to vessels on the Mississippi River and its tributary waters; the International Regulations, 33 U.S.C. §§ 1051–94, applicable to United States vessels on the high seas; and the Inland Rules, 33 U.S.C. §§ 151–232, applicable to vessels on all other inland waters under United States jurisdiction. Pilot Rules have been promulgated for each set of statutory navigation rules. 33 C.F.R. §§ 80.01 to 96.10–1. Because they have been promulgated pursuant to authority delegated in the statutory rules, e. g., 33 U.S.C. § 243, the Pilot Rules have the same force and effect as the statutory rules. *Belden v. Chase*, 150 U.S. 674, 698, 14 S.Ct. 264, 37 L.Ed. 1218 (1893). Thus, a breach of a Pilot Rule by a defendant in a collision

case will shift the burden of proof to him under *The Pennsylvania.* Id. at 699, 14 S.Ct. 264.

## A

Before determining whether the district judge erred by failing to invoke the *Pennsylvania* rule, we must determine which set of navigation rules should have been followed at the place of the collision.

On their face, the Pilot Rules indicate that the Great Lakes Rules are applicable. 33 C.F.R. § 90.03 states that the demarcation line between "Rules of the Road—Great Lakes" and "Rules of the Road—Western Rivers" is "on the Chicago River at the east side of the Ashland Avenue Bridge." The instant collision occurred on the river well upstream from the Ashland Avenue Bridge, in the area of the Chicago River generally covered by the Great Lakes Rules.

However, the appellee argues that both the Western Rivers and the Great Lakes Rules regarding lights governed its barge tow at the point of the collision because the tow was proceeding to waters regulated under the Western Rivers Rules. In support of its position, the appellee cites 33 C.F.R. § 95.33, a provision in the Pilot Rules for the Western Rivers, that states:

"§ 95.33. LIGHTS FOR BARGES TEMPORARILY OPERATING WITHIN OR WITHOUT WESTERN RIVERS.

Nothing in §§ 95.29 [which sets forth the Western Rivers Rule regarding lights for barges towed ahead or alongside] and 95.31 [which sets forth the Western Rivers Rule regarding lights for barges towed astern] shall be construed as compelling barges being towed, when passing through any waters coming within the scope of any regulation where lights for barges are different from those of the

waters whereon such barges are usually employed, to change their lights from those required on the waters from which their trip begins or terminates; but should barges engage in local employment on waters requiring different lights from those where they are customarily employed, they shall comply with the local rules where employed: *Provided,* That such barges (including canal boats) being towed on the Great Lakes and their connecting waters and the St. Marys River shall comply with the rules prescribing lights for craft being towed on such waters."

Under the appellee's construction of this rule, the tow barge involved in the collision had the option of complying with either the Western Rivers or the Great Lakes Rules regarding lights because the barge was passing through waters under the Great Lakes Rules on the way to a destination on waters regulated under the Western Rivers Rules. Clearly, the tow barge was not engaged in "local employment" on waters regulated under the Great Lakes Rule because the purpose of the trip was to transport the empty barges to Lockport, Illinois, a town situated on waters regulated under the Western Rivers Rules. Further, the appellee argues that the proviso to the rule is inapplicable in this case because it is limited to barges "being towed on the Great Lakes and their *connecting* waters," and thus does not apply to barges being towed on Great Lakes' *tributary* waters. The Chicago River, in the appellee's view, is a tributary water not covered by the proviso. To buttress this distinction, the appellee points out that elsewhere in the Pilot Rules, and in the statutory rules, it is stated that the Great Lakes Rules cover the lakes and both their *connecting and tributary* waters. *E. g.,* 33 U.S.C. § 241; 33 C.F.R. § 90.01.[1]

---

1. It also may be argued that the proviso does not apply to vessels traveling the Chicago River because the river is not a "connecting water" in that it does not connect two of the Great Lakes. However, this interpretation of the term "connecting waters" is inconsistent with

its interpretation elsewhere in the Great Lakes Rules.

33 C.F.R. § 241 states that the Great Lakes Rules shall be followed in the navigation of vessels "upon the Great Lakes and their connecting and tributary waters." 33 C.F.R. § 90.-03(a)(2) implements this rule by applying the

We reject the appellee's argument for two reasons. First, the accident occurred in a river that is not a tributary of the Great Lakes and thus would not be excluded from the proviso under the appellee's construction. The Chicago River flows out of Lake Michigan rather than into it, a fact which is common knowledge in this locale and of which we are free to take judicial notice. *Grand Opera Co. v. Twentieth Century-Fox Film Corp.,* 235 F.2d 303 (7th Cir. 1956); *Spillway Marina, Inc. v. United States,* 445 F.2d 876 (10th Cir. 1971); *Alvary v. United States,* 302 F.2d 790 (2d Cir. 1962).

Second, the appellee's construction of the proviso is not supported by the history of the regulation or by any policy behind the rules.

The portion of 33 C.F.R. § 95.33 preceding the proviso was promulgated in 1948 as part of a general revision of the Pilot Rules undertaken to implement a new set of Western Rivers Rules passed by Congress in 1948 as Pub.L. No. 80–544, 62 Stat. 249, 13 Fed.Reg. 4638 (Aug. 11, 1948). In addition to changing the substance of the Western Rivers Rules, Pub.L. No. 80–544 set forth a new line of demarcation between the waters governed by the Western Rivers Rules and those governed by the Inland Waters Rules. Prior to 1948, the Western Rivers Rules covered all rivers and their tributaries emptying into the Gulf of Mexico. The Inland Waters Rules covered all bays, inlets, channels and other inland waters that were not covered by the other rules. This demarcation system created difficulties for vessels traveling in the Gulf Intracoastal Waterway because they had to follow Western Rivers Rules for those portions of their journey that passed through rivers that flowed into the Gulf—notably the Mississippi and Atchafalaya—and Inland Waters Rules for the remainder of their voyage. Pub. L. No. 80–544 eliminated most of these difficulties by demarking the line between the two sets of rules at

points on the Mississippi and Atchafalaya Rivers upstream from those portions traveled by vessels using the Gulf Intracoastal Waterway. S.Rep. No. 1215, 80th Cong., 2d Session (1948).

While nothing in the published history of 33 C.F.R. § 95.33 (formerly Section 332.35) mentions any purpose for its passage other than the general one of implementing Pub.L. No. 80–544, 13 Fed.Reg. 4638 (Aug. 11, 1948), it is reasonable to infer that it primarily was written to alleviate the burden of having to follow two sets of light rules for those vessels that travel between the two portions of the Mississippi and Atchafalaya Rivers governed by different rules. Before the passage of Pub.L. No. 80–544, the entire voyage of such vessels was governed by the Western Rivers Rules.

This inference is supported by the statement of reasons given for the promulgation of the proviso to Section 95.33 in 1949. In its notice of proposed rulemaking, the Coast Guard stated:

"It has been recommended that 33 C.F.R. 95.33 regarding lights for barges temporarily operating within or without Western Rivers, be amended by addition of a proviso thereto requiring Western River barges to carry lights required by Great Lakes Pilot Rules when being navigated on the Great Lakes and connecting waters. The reason is that the provisions of § 95.33 as applied to craft being towed from the western rivers into the Great Lakes are in conflict with the requirements for lights for such vessels that have already been established for the Pilot Rules for the Great Lakes." 14 Fed. Reg. 1129 (March 12, 1949).

The reference in the last sentence to the *already established* Great Lakes light requirements indicates that the original regulation was never intended to cover vessels traveling in waters governed by the Great Lakes Rules. It suggests that the regulation was originally promulgated with other

---

Great Lakes Rules to the Chicago River upstream from the Ashland Avenue Bridge. Thus the Chicago River must be either a "connecting" or a "tributary" water of the Great Lakes.

Clearly it is not a tributary because it flows out of the lake. See discussion *infra.* It therefore must be a connecting water.

waters in mind—notably the portions of the Mississippi and Atchafalaya Rivers that were governed by the Western Rivers Rules prior to the passage of Pub.L. No. 80–544. Section 95.33 did not contravene any established requirements for vessels in such waters; it merely maintained the status quo. Absent Section 95.33, vessels that formerly had used one set of lights while traveling those rivers would have had to switch lights during their voyage to comply with Pub.L. No. 80–544.

Nowhere in the published history of the proviso is it mentioned that the proviso does not cover all waters governed by the Great Lakes Rules. Moreover, the parties have not told us of any policy promoted by exempting the Chicago River from its operation.

We can only conclude that the Coast Guard's failure to reconcile the terms used in the proviso to Section 95.33 with the terms used in other parts of the navigation rules was merely an oversight in drafting with no operative significance. Consequently, we hold that the proviso to 33 C.F.R. § 95.33 applies to vessels traveling the South Branch of the Chicago River upstream from the Ashland Avenue Bridge, and accordingly, that the vessels involved in the instant collision were required at the place of the incident to comply with the Great Lakes Rules regarding lights for barges.

### B

■ Next we must determine whether the defendant's vessel was operating in violation of the Great Lakes Rules at the time of the collision. As we survey the various provisions of the Rules that the appellant claims were violated by the appellee, we must bear in mind that the Rules:

"[A]re not mere prudential regulations, but binding enactments, obligatory from the time that the necessity for precaution begins, and continuing so long as the means and opportunity to avoid the danger remain. *The Dexter*, [90 U.S. 69,] 23

Wall. 69, [23 L.Ed. 84]. Obviously, they must be rigorously enforced, in order to attain the object for which they were framed, which could not be secured if the masters of vessels were permitted to indulge their discretion in respect of obeying or departing from them." *Belden v. Chase*, 150 U.S. 674, 698, 14 S.Ct. 264, 271 (1893); Accord, *Reiss S.S. Co. v. Compagnia Fletera Cajotamil*, 374 F.2d 117 (6th Cir. 1967).

### Lights

■ Rule 3(a) of the Great Lakes Rules, 33 C.F.R. § 252(a), requires a steam vessel underway to carry:

"(a) On or in front of the foremast, or if a vessel without a foremast, then in the fore part of the vessel, a bright white light so constructed as to show an unbroken light over an arc of the horizon of twenty points of the compass, so fixed as to throw the light ten points on each side of the vessel, namely, from right ahead to two points abaft the beam on either side, and of such a character as to be visible at a distance of at least five miles."

The appellee's towboat carried such a light on the forepart of the vessel, but it was not illuminated at the time of the collision. Moreover, the towboat did not carry a second bright light "in a vertical line not less than six feet above or below" the aforementioned light, as required by Rule 4, 33 U.S.C. § 253. The barge tow did carry a flashing amber light at its center head. Such a light is not mentioned in the Great Lakes Rules, and its use violates Rule 2, 33 U.S.C. § 251, that forbids the exhibition of lights that may be mistaken for lights prescribed by the rule. 33 C.F.R. § 90.19a of the Pilot Rules allows "canal boats towed by being pushed ahead" to carry an *unbroken* amber light at the extreme forward end of the tow. The flashing amber light exhibited by the tow in the instant case does not meet this rule and could be confusing to another vessel in the waterway.

All of these violations are significant, especially in view of the fact that the collision

occurred in a built-up area where lights other than those on the river can confuse pilots. Under such conditions, a pilot must rely on the type of light exhibited in order to determine the nature of an obstacle confronting him on his course and easily could be mistaken by lights that do not adhere to the rules.

### Lookout

■ While the Great Lakes Rules do not require a vessel to maintain a lookout at all times, it is a general rule of navigation that one be present, and a violation of the rule "casts upon a vessel the same burden as the violation of a statutory rule." *Martin Marine v. Jacobsen,* 135 F.2d 325, 328 (2d Cir. 1943) (L. Hand, J.), citing *The Ariadne,* 80 U.S. 475, 479, 13 Wall. 475, 20 L.Ed. 542 (1971). In *The Ariadne,* the Supreme Court emphasized the importance of the lookout's role and the high standard of diligence he must follow:

> "The greatest care and caution are necessary. The duty of the lookout is of the highest importance. Upon nothing else does the safety of those concerned so much depend. A moment's negligence on his part may involve the loss of his vessel with all the property and the lives of all on board. The same consequences may ensue to the vessel with which he shall collide. In the performance of this duty the law requires indefatigable care and sleepless vigilance." 80 U.S. at 478, 13 Wall. at 475, 20 L.Ed. 542.

■ Immediately before the collision in the instant case, the tow barge's lookout was called from his post in order to obtain a jackstaff from the towboat. He testified that he did not see the decedent's boat approach the tow. From the record it is unclear whether the lookout was headed back toward the towboat when the decedent's boat came into view, or whether he was looking down the river and failed to see the boat approaching. Under either version of the evidence, the appellee failed to meet the lookout requirement. There either was no lookout at all, or the lookout was not vigilantly performing his job.

### Sound Signals

33 C.F.R. § 90.2 of the Great Lakes Pilot Rules requires a pilot who fails to understand the course of an approaching vessel to immediately give a "danger signal of several short and rapid blasts of the whistle not less than five." The pilot of the tow barge did not comply with this rule.

It also appears that the tow barge failed to sound a required river bend signal before the collision. 33 C.F.R. § 90.6 requires the pilot of a vessel in a channel within a mile of a short bend or curve to sound a one-blast whistle signal of at least eight seconds duration. The collision occurred within a half-mile of the river's bend at Harrison Street, and the tow pilot failed to sound the required signal.

### III

■ On the basis of these violations of the applicable navigation rules, it is clear that the rule of *The Pennsylvania* should have been applied in this case. Inasmuch as the district court did not apply the rule and the defendant was not required to prove that its vessel's violations could not have been contributing causes of the collision, we must reverse the decision below and remand this case for a new trial.

REVERSED and REMANDED.