The FIRST NATIONAL BANK OF CHICAGO, Executor of the Will of Wayne J. Hart, Deceased, Plaintiff-Appellee, Cross-Appellant,

v.

MATERIAL SERVICE CORPORATION, a corporation, Defendant-Appellant, Cross-Appellee.

Nos. 78–1831, 78–1832.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1979.

Decided April 27, 1979.

Rehearing Denied June 1, 1979.

Stephen A. Milwid, Chicago, Ill., for defendant-appellant, cross-appellee.

Marshall E. LeSueur, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Before CUMMINGS, Circuit Judge, MARKEY, Chief Judge,* and TONE, Circuit Judge.

* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

1. The action was brought under the authority of *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) which overruled *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886) and held that

MARKEY, Chief Judge.

Action in admiralty by the First National Bank of Chicago (Bank), executor of Wayne J. Hart (Hart), who died when his pleasure boat collided with a barge tow operated by Material Service Corporation (Material Service).[1] We affirm in part, reverse in part, and remand.

## Background

In a first trial, the district court absolved Material Service of fault, viewing Hart's imprudent navigation and boat handling as negligence and as the sole cause of the collision. On appeal, this court held Material Service guilty of certain statutory faults and remanded for a new trial. *First National Bank of Chicago v. Material Service Corp.*, 544 F.2d 911 (7th Cir. 1976).

In a second trial, the district court found Material Service's statutory faults the sole cause of the collision and entered judgment in favor of the Bank in the amount of $602,000.[2]

Material Service appeals the findings on liability and amount of damages. The Bank cross-appeals a denial of additional damages as prejudgment interest.

## Facts

Late in the afternoon of April 20, 1973, Hart and two companions, Holcombe and Johnson, began cruising the Chicago River in Hart's 16 foot outboard pleasure boat. They resumed boating that night after stopping briefly at a marina restaurant to drink alcoholic beverages. Shortly after 8:00 p. m., Hart was northbound, about ½ mile north of the Harrison Street river bend, near the Congress Street Bridge, one of the many that span the Chicago River as

the general maritime law affords a cause of action for wrongful death.

2. In this court's earlier opinion no reference was made to the apportionment of collision responsibility described in *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975).

it winds through a canyon-like section of tall city buildings.

A Material Service towboat-pushed flotilla of two lashed abreast barges, each 35 feet wide, was proceeding southbound toward the Congress Street Bridge, beneath which the river provided a horizontal clearance of 168 feet.

The barge displayed red and green directional lights at the corners of its bow and a flashing amber light at its center head. A forward-facing white light on the pilot house of the towboat was not illuminated. The barge pilot, Howard Little, had ordered the barge's lookout away from his post on a minor errand. Hart's boat displayed a green (starboard) and a red (port) light on its bow and a white light on its stern.

Pilot Little saw Hart's red light 800 to 1,000 feet ahead and sounded his whistle for a port-to-port passing. When Hart's boat then showed both its red and green lights, indicating a collision course, Little steered right and reversed his engines, leaving Hart a wide expanse of clear water to the east. Hart's boat struck the center of the bow on the easternmost barge, then situated west of the center line of the river. Hart and Johnson were killed.

Empty beer cans floated among the collision debris. Hart's deteriorated body was autopsied 12 days later, revealing a blood alcohol level of .104 milligrams.

In the first trial, the district court found Hart negligent "in not effecting a port-to-port passing" and in "striking one of the barges . . . west of the center line of the river," and that those acts were "the sole cause of the collision." The court concluded that the Bank failed its burden of proving that Material Service was guilty of any contributing act or omission.

This court reversed and remanded for a new trial, finding error in a failure to apply the rule of *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874). Under the rule of that case, Material Service has the burden of proving that no contribution to the cause of the collision resulted from its violation of several Navigation Rules for Great Lakes and their Connecting and Tributary Waters, 33 U.S.C. §§ 241–295 (1976) (Great Lakes Rules), Pilot Rules for the Great Lakes, 33 C.F.R. §§ 90.01–.46 (1977) (Pilot Rules) and the lookout rule. *First National Bank of Chicago v. Material Service Corp., supra.*

In particular, this court found that Material Service violated: (1) Great Lakes Rule 2, 33 U.S.C. § 251 (1976), by displaying a flashing amber light mistakable with the unbroken amber light permitted by the Pilot Rules, 33 C.F.R. § 90.19a (1977);[3] (2) Great Lakes Rule 3(a), 33 U.S.C. § 252(a) (1976),[4] by not illuminating its forward-fac-

**3.** Great Lakes Rule 2 provides:
§ 251. Time for lights; prescribed lights exclusive; "visible" defined (Rule 2)
The lights mentioned in the following rules, and no others which may be mistaken for the prescribed lights, shall be exhibited in all weathers from sunset to sunrise. The word "visible" in these rules, when applied to lights, shall mean visible on a dark night with a clear atmosphere.
33 C.F.R. § 90.19a (1977) of the Pilot Rules provides, in pertinent part:
§ 90.19a Lights for canal boats towed by being pushed ahead.
When a tow of one or more canal boats is towed by being pushed ahead of a steam vessel such tow shall carry a green light on the starboard side and a red light on the port side so placed that they mark the tow at its maximum projection to starboard and port, respectively, and may carry an amber light at the extreme forward end of the tow as near

the centerline as it is practicable to carry such light. . . . The amber light described shall show an unbroken light over an arc of the horizon of twenty points of the compass, so fixed as to throw the light ten points on each side, namely from right ahead to two points abaft the beam on either side, and be of such a character as to be visible at a distance of at least three miles.

**4.** Great Lakes Rule 3(a) provides:
§ 252. Lights of steam vessel under way (Rule 3)
Except in the cases hereinafter expressly provided for, a steam vessel when under way shall carry:
(a) On or in front of the foremast, or if a vessel without a foremast, then in the fore part of the vessel, a bright white light so constructed as to show an unbroken light over an arc of the horizon of twenty points of the compass, so fixed as to throw the light

ing white light; (3) Great Lakes Rule 4, 33 U.S.C. § 253 (1976),[5] by not carrying a second bright light within 6 vertical feet of the white light; (4) 33 C.F.R. § 90.2 (1977) of the Pilot Rules[6] by not sounding a 5-blast danger whistle when Hart's intended course became unclear; (5) 33 C.F.R. § 90.6 (1977) of the Pilot Rules[7] by not sounding a river bend signal; and (6) the general navigation rule requiring a vessel to maintain a lookout at all times. *First National Bank of Chicago v. Material Service Corp., supra* at 917–18.

On remand, the district court, after considering stipulated portions of the evidence from the first trial and new evidence not previously offered, concluded that Material Service's statutory violations were contributory causes of the collision. The absence of a lookout was highlighted by noting that Little's downriver view was obstructed for at least 400 feet in front of the barge. Viewing the barge's improper lighting as creating a "traveling trap" moving down a dark river, the court imposed on Material Service the burden of introducing "evidence

of the strongest nature" to prove that the lighting violations were not at least a contributing cause of the collision. Finding that Material Service did not sustain that burden, the court went on to decide that Hart's boat handling and navigation did not contribute to the cause of the collision.

The court found that Hart was not intoxicated, relying on toxicologists who said the alcohol in Hart's body was not from pre-death ingestion but was from bacterial action in body decomposition, and on Holcombe's statement that Hart drank only one scotch and water, the beer having been consumed entirely by Holcombe and Johnson. The court also accepted Holcombe's testimony that Hart was cruising at only 12–15 m. p. h. at the time of the collision, and discredited the contrary testimony of other witnesses whose identifications of Hart's boat were questionable. Finally, the court absolved Hart of negligence in operating west of the river center line, finding that Material Service's violation of the light rules provided inadequate warning of the barge's presence.

ten points on each side of the vessel, namely, from right ahead to two points abaft the beam on either side, and of such a character as to be visible at a distance of at least five miles. Such light shall be at a greater height above the water than the side lights required by subdivisions (b) and (c) of this section.

5. Great Lakes Rule 4 provides:
§ 253. Lights of steam vessel having a tow other than raft (Rule 4)
A steam vessel having a tow other than a raft shall in addition to the forward bright light mentioned in subdivision (a) of section 252 of this title carry in a vertical line not less than six feet above or below that light a second bright light of the same construction and character and fixed and carried in the same manner as the forward bright light mentioned in said subdivision (a) of section 252 of this title. Such steamer shall also carry a small bright light abaft the funnel or after mast for the tow to steer by, but such light shall not be visible forward of the beam.

6. The rule provides:
§ 90.2 Danger signal.
If, when steamers are approaching each other, the pilot of either vessel fails to understand the course or intention of the other, whether from signals being given or answered erroneously or from other causes, the pilot so in doubt shall immediately signify the same by giving the danger signal of several

short and rapid blasts of the whistle not less than five; and if both vessels shall have approached within half a mile of each other, both shall be immediately slowed to a speed barely sufficient for steerageway, and, if necessary, stopped and reversed, until the proper signals are given, answered, and understood, or until the vessels shall have passed each other.

7. The rule provides:
§ 90.6 Vessels nearing short bend or curve in channel.
Whenever a steam vessel is nearing a short bend or curve in the channel, where, from the height of the banks or other cause, a steam vessel approaching from the opposite direction cannot be seen for a distance of half a mile, the pilot of such steam vessel, when he shall have arrived within half a mile of such curve or bend, shall give a signal by one blast of the whistle, of at least 8 seconds duration, which signal shall be answered by a similar blast, given by the pilot of any steam vessel within hearing that may be approaching on the other side, and within half a mile, of such bend or curve. Should such signal be so answered by a steam vessel upon the farther side of such bend, then the usual signals for meeting and passing shall immediately be given and answered.

Based on all the evidence, the court found that the Bank's expert witness, Professor Friedman, had reasonably computed damages of $187,000 for accrued lost income and $415,000 for the present value of lost future income.

### Issues

The issues are whether the district court erred in: (1) finding Material Service guilty of statutory faults contributing to the cause of the collision; (2) finding Hart free of contributory negligence;[8] (3) assessing damages; or (4) denying additional damages as prejudgment interest.

### OPINION

#### a. *Scope of Review*

■ In reviewing the judgment of a district court sitting without a jury in admiralty, this court exercises a scope of review no greater than that provided for under Rule 52(a) and will not set findings aside unless they are clearly erroneous. *Glenview Park District v. Melhus*, 540 F.2d 1321, 1323 (7th Cir. 1976), *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977); *Federal Line Towing Service, Inc. v. Toledo, Peoria & Western Railroad Co.*, 539 F.2d 1107, 1110 (7th Cir. 1976). In applying Rule 52(a), as recognized in *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954), a finding may be set aside when "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Glenview Park District v. Melhus, supra* at 1323.

---

**8.** At oral argument, Material Service conceded that the scope of remand was broad enough to permit the district court to disregard the finding of Hart's negligence on the first trial.

**9.** The Pilot Rules are detailed navigation regulations issued by the Commandant of the Coast Guard under 33 U.S.C. § 243 (1976). The rules have the force of a statutory enactment and a violation of either carries the same consequences. *Belden v. Chase*, 150 U.S. 674, 698, 14 S.Ct. 264, 37 L.Ed. 1218 (1893). In addition, violation of the general navigation rule requiring a vessel to maintain a lookout creates the same burden as that created by violation of a

Assignments of error not called to the attention of the trial court, and questions of fact not a subject of findings below will not be resolved on appeal. *Cleary v. Indiana Beach, Inc.*, 275 F.2d 543, 546 (7th Cir.), *cert. denied*, 364 U.S. 825, 81 S.Ct. 62, 5 L.Ed.2d 53 (1960); *Bowles v. Hayes*, 155 F.2d 351, 353 (3d Cir. 1946).

■ The "law of the case" doctrine, as stated by this court in *Kaku Nagano v. Brownell*, 212 F.2d 262, 263 (7th Cir. 1954), requires that "in a trial following a reversal and remand, if the evidence is substantially the same as the facts upon which the reviewing court based its decision, matters decided on appeal become the law of the case to be followed in all subsequent proceedings in the trial court and, on second appeal, in the appellate court, unless there is plain error of law in the original decision." The introduction of merely cumulative new evidence does not take the case outside the rule. *Id.*

#### b. *Applicable Law*

■ Collision liability is based on fault. *The Java*, 81 U.S. (14 Wall.) 189, 20 L.Ed. 834 (1872). The statutory Rules of Navigation and the Pilot Rules,[9] define mandatory standards of conduct that are strictly and literally applied, *Belden v. Chase, supra* note 9. Breach of a rule constitutes a "statutory" fault. Departures from the rules are permitted in "special circumstances,"[10] but the party seeking to justify a departure bears the burden of proving it clearly necessitated by a sudden and alarming emergency. *Belden v. Chase, supra* note 9 at 699, 14 S.Ct. 264, 37 L.Ed. 1218.

---

statutory rule. *Martin Marine Transp. Co., Inc. v. Jakobson & Peterson, Inc.*, 135 F.2d 325 (2d Cir. 1943).

**10.** For example, Great Lakes Rule 27, 33 U.S.C. § 292 (1976) provides:

> § 292. Departure from rules to avert immediate danger (Rule 27)
>
> In obeying and construing these rules due regard shall be had to all dangers of navigation and collision and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger.

Liability is not imposed for statutory fault unless it contributed to the cause of the collision. *The Farragut,* 77 U.S. (10 Wall.) 334, 19 L.Ed. 946 (1870). However, once statutory fault is shown, the rule of *The Pennsylvania, supra,* raises the presumption stated by the Supreme Court in the case bearing that name:

> The liability for damages is upon the ship or ships whose fault caused the injury. But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute.

Thus a party guilty of a statutory fault, to escape liability, must prove that the fault not only was not but *could not* have been a cause of the collision. *Chicago and Western Indiana Railroad Co. v. Motorship Buko Mary,* 505 F.2d 579, 582 (7th Cir. 1974); *In re O. L. Schmidt Barge Lines, Inc.,* 475 F.2d 428, 431 (7th Cir.), *cert. denied,* 414 U.S. 828, 94 S.Ct. 50, 38 L.Ed.2d 62 (1973). The rule does not require proof that the fault could not "by any stretch of the imagination" have had a causal relation "speculative, improbable or remote." *China Union Lines, Ltd. v. A. O. Andersen & Co.,* 364 F.2d 769, 782 (5th Cir. 1966), *cert. denied,* 386 U.S. 933, 87 S.Ct. 955, 17 L.Ed.2d 805 (1967). And liability can be escaped upon proof that the fault "could not reasonably be held to have been a proximate cause of the collision." *United States v. Joyce,* 511 F.2d 1127, 1129 (9th Cir. 1975). *See also*

*Board of Commissioners v. M/V Farmsum,* 574 F.2d 289, 297 (5th Cir. 1978).

Under Great Lakes Rule 28, 33 U.S.C. § 293 (1976),[11] compliance with all "statutory" rules is not alone sufficient to avoid liability. The ordinary standards of good seamanship, *i. e.,* due care, and the general concept of negligence, remain applicable to both parties. Hence application of the rule of *The Pennsylvania* to the acts and omissions of one party does not exonerate another, whose negligence may also have been a proximate cause of a collision. *Crown Zellerbach Corp. v. Willamette-Western Corp.,* 519 F.2d 1327, 1329 (9th Cir. 1975).

**(1)** *Statutory Faults of Material Service*

In the first appeal, this court, noting Little's admissions, held Material Service guilty of violating three light rules, two whistle rules, and one lookout rule. The only new liability evidence presented by Material Service on remand was the testimony of Lucas, the Congress Street Bridge tender, and that of expert witnesses Peterson and Moore. Lucas' description of the position of the barge tow in the river at the time of the collision has no bearing on whether Material Service violated any rule. Similarly, the expert witnesses, who lacked direct knowledge of the collision did not contend that Material Service was free of fault. Peterson did attempt to justify breach of navigation rules, but his proffered explanations, *e. g.,* that the required lights would have reflected back into Little's eyes from the river bridges, do not suggest that the Material Service flotilla was operating under sudden and alarming emergency conditions.[12] Thus, the district

---

11. Great Lakes Rule 28 provides:

   § 293. Usual additional precautions required generally (Rule 28)

   Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of a neglect of any precaution which may be required by the

ordinary practice of seamen, or by the special circumstances of the case.

12. Peterson admitted that, despite the earlier opinion of this court, Material Service has continued to operate barges along the involved portion of the Chicago River without the lights required by Great Lakes Rules 3(a) and 4, *supra.*

court correctly treated Material Service's statutory fault as the law of the case.[13]

If maritime collisions are to be avoided, knowledge of the character and course of oncoming vessels is indispensable. The light rules embody an elaborate code designed to convey that information. The extreme blackness of water at night makes any departure from light rules "one of the most wrecklessly unlawful acts a vessel can commit." *Bradshaw v. The Virginia*, 176 F.2d 526, 530 (4th Cir.), *cert. denied*, 338 U.S. 892, 70 S.Ct. 244, 94 L.Ed. 548 (1949). Holcombe suggested that just before the collision no occupant of Hart's boat was aware they were approaching another craft. Had they seen Material Service's flotilla, its improper lighting would have made determination of its size or course difficult if not impossible. Peterson's attempted justification ignores the warning function of navigation lights. Material Service's breach of whistle rules contributed further to Hart's lack of warning.

With Little's visibility limited, a vigilant lookout might have observed Hart's oncoming boat before Little did and given an earlier warning.

**13.** Responding to hypothetical questions, Peterson and Moore said none of the six faults could have contributed to the collision. Nothing of record establishes that the district court erred when it declined to accept those opinions.

**14.** 33 U.S.C. § 210 (1976) provides:
§ 210. Steam vessel in narrow channel (art. 25)
In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel.
In narrow channels a steam vessel of less than sixty-five feet in length shall not hamper the safe passage of a vessel which can navigate only inside that channel.

**15.** In view of our holding, we need not consider the Bank's argument that the cited rule was not pleaded or argued below.

**16.** The Inland Waters Rules provide:
§ 154. Adoption of rules for navigation of harbors, rivers, and inland waters
The following regulations for preventing collisions shall be followed by all vessels upon the harbors, rivers, and other inland waters of the United States except the Great

Thus a causal relation between Material Service's statutory faults and the collision cannot be deemed "speculative, improbable or remote," as defendant contends. We find no error in the district court's holding that Material Service failed to sustain its burden of proving its statutory faults noncontributory to the cause of the collision.

### (2) *Negligence of Hart*

Material Service's principal contention is that Hart violated the "Narrow Channel Rule," 33 U.S.C. § 210 (1976),[14] by ignoring defendant's signal for a port-to-port passing, changing course to port, crossing the center line of the river, and striking defendant's barge west of the center line.[15] That contention must fail. The rule cited by Material Service is part of the Navigation Rules for Harbors, Rivers, and Inland Waters Generally, 33 U.S.C. § 151–232 (1976) (Inland Waters Rules). In the first appeal, this court ruled that the involved portion of the Chicago River was governed by the Great Lakes Rules. Consequently, the Inland Waters Rules are inapplicable.[16]

Great Lakes Rule 24, 33 U.S.C. § 289 (1976),[17] the counterpart of the cited

Lakes and their connecting and tributary waters as far east as Montreal, and the waters of the Mississippi River between its source and the Huey P. Long Bridge and all of its tributaries emptying thereinto and their tributaries, and that part of the Atchafalaya River above its junction with the Plaquemine-Morgan City alternate waterway, and the Red River of the North, and are declared special rules duly made by local authority.
33 U.S.C. § 154 (1976).

**17.** Great Lakes Rule 24 provides:
§ 289. Steam vessels meeting in narrow channels having current and certain rivers; right-of-way (Rule 24)
In all narrow channels where there is a current, and in the rivers Saint Mary, Saint Clair, Detroit, Niagara, and Saint Lawrence, when two steamers are meeting, the descending steamer shall have the right-of-way, and shall, before the vessels shall have arrived within the distance of one-half mile of each other, give the signal necessary to indicate which side she elects to take.
In all narrow channels a steam vessel of less than sixty-five feet in length shall not hamper the safe passage of a vessel which can navigate only inside that channel.

narrow channel rule, does not require vessels to stay in the starboard side of a channel. It requires a vessel to signal which side she elects to take. Rule 24 was not raised below. The district court did not consider whether the involved river portion was a narrow channel, or whether a proper signal was given, under the criteria of Rule 24. We decline to make those determinations in the first instance.

■ Unlike the automobile highway rules, there is no general maritime rule requiring a vessel to operate in the right half of a channel except when overtaking and passing a vessel ahead. Hence we find no error in the district court's determination that Hart's operation of his boat west of the center line of the river did not in itself constitute negligence.

Nor did the district court err in finding that Hart was neither speeding nor under the influence of alcohol. Holcombe and Little were the only witnesses who observed Hart's boat just before the collision. Holcombe said it was travelling at 12–15 m. p. h. and Little was unable to estimate its speed. The testimony of other witnesses, concerning the speed of an unidentified boat several hours before the collision, is irrelevant. Opinion testimony respecting damage to Hart's boat was weak. The weight of the evidence clearly supports a finding that the alcohol in Hart's blood was from post-mortem decomposition and putrefaction. Expert toxicologists said the decomposition process can produce almost twice the alcohol level in Hart's blood. Holcombe, with Hart for five hours immediately before his death, said Hart had had only one drink and was not intoxicated.

■ We do find, however, clear error in the absolution of Hart from all contributory negligence. At some point, Hart saw, or should have seen, a flashing amber light, a red port light, and a green starboard light. There was testimony that a barge whistle was sounded. Visibility was good. Though the Bank suggests an impossibility of distinguishing vessel lights from those on bridges and buildings, Little saw the red running light on Hart's boat 800–1,000 feet

downstream. Under those circumstances, Hart should have been on warning that *something* stood ahead, and that prudent navigation dictated caution. Liability can attach to Hart even though Material Service's breach of navigation rules may have made it difficult or impossible for him to determine the *precise* character or course of the object he was approaching.

Hence, we reverse the district court and hold Hart guilty of contributory fault. Because Material Service and Hart were both responsible for the collision, we remand for a determination of their comparative degrees of fault and an allocation of damages in accordance with that determination. *United States v. Reliable Transfer Co., Inc.,* supra note 2; *Nutt v. Loomis Hydraulic Testing Co., Inc.,* 552 F.2d 1126, 1134 (5th Cir. 1977).

### (3) Assessing Damages

■ Assessment of damages rests on determinations of questions of fact. *Harry Alter Co. v. Chrysler Corp.,* 285 F.2d 903, 907 (7th Cir. 1961). The district court has wide latitude on that question, *Turner v. Pfluger,* 407 F.2d 648, 650 (7th Cir. 1969), and its findings will not be set aside unless they are clearly erroneous. *United States ex rel. H & S Industries v. F. D. Rich Co., Inc.,* 525 F.2d 760, 767 (7th Cir. 1975).

Material Service attacks Professor Friedman's estimate of damages sustained by Hart's survivors because it did not recognize that Hart faced separate maintenance proceedings, had incurred certain partnership losses, and was liable for future income taxes. The amount of damages found, however, was not based solely on testimony of Friedman, but on the entire record, including the testimony of Ann Hart, Hart's widow, Jerome Hart, Hart's business associate and successor as president and chief executive officer of National Decorating Service (National), National's audited annual reports for 1970–73, and Hart's personal income tax returns for 1970–72. That evidence demonstrated that Hart was the sole owner and chief operating officer of a con-

**1120**

tracting business having a net worth of $301,831, that his personal income in the three calendar years immediately preceding death increased from $30,851 to $41,501, that he was extremely frugal, that he was 45 years old at death, and that he left surviving a 43 year old wife and six children ranging in age from 10 to 20 years.

In fixing damages to survivors, a deduction is required for income taxes payable on decedent's probable future earnings when the tax impact "has a significant and substantial effect on the computation of probable future contributions" to the survivors. *Cox v. Northwest Airlines, Inc.,* 379 F.2d 893, 896 (7th Cir. 1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968). Though Friedman made no deduction for taxes, he said any deduction would be virtually washed out by the increase in the "present value of future earnings" fund necessary to compensate the survivors for taxes they would pay on interest earned by that fund.

The district court found Friedman's computation of damages reasonable and that the damages proved by a preponderance of the evidence amounted to $602,000. Those findings were amply supported by the evidence. If Material Service were solely responsible for the collision, it would be required to pay that amount. As above indicated, however, that amount will be reduced on remand in proportion to the share of responsibility for the collision attributed by the district court to Hart.

### (4) Prejudgment Interest

In *Moragne v. States Marine Lines, Inc., supra* note 1, at 408, 90 S.Ct. at 1792, the Supreme Court specifically declined to spell out details of the then newly recognized cause of action for wrongful death under the general maritime law, stating:

If still other subsidiary issues should require resolution, such as particular questions of the measure of damages, the courts will not be without persuasive analogy for guidance. Both the Death on the High Seas Act and the numerous state wrongful-death acts have been im-

plemented with success for decades. The experience thus built up counsels that a suit for wrongful death raises no problems unlike those that have long been grist for the judicial mill.

Since *Moragne,* this court has had limited opportunity to review admiralty actions involving claims of wrongful death. *Glenview Park District v. Melhus, supra* at 1323. Material Service relies on *Union Steamboat Co. v. Fitzgibbons,* 261 F. 768 (7th Cir. 1919) and *Union Steamboat Co. v. Chaffin's Adm'rs.,* 204 F. 412 (7th Cir. 1913), which suggest that the personal injury tort claim rule, *i. e.,* interest not allowable until damages are liquidated, precludes allowance of prejudgment interest in wrongful death cases in admiralty. The *Union Steamboat* cases, however, are deprived of precedential value, having been decided when, pursuant to *The Harrisburg, supra* note 1, admiralty courts did not recognize a cause of action for death under the general maritime law. Moreover, both predate, by almost half a century, the judicial extension of prejudgment interest to maritime death awards under the Jones Act, 46 U.S.C. § 688 (1976) and the Death on the High Seas Act, 46 U.S.C. §§ 761–768 (1976) (DOHSA). *See Dugas v. National Aircraft Corp.,* 438 F.2d 1386, 1392 n.11 (3d Cir. 1971) (DOHSA); *Gardner v. National Bulk Carriers, Inc.,* 333 F.2d 676, 677 (4th Cir. 1964) (Jones Act); *Moore-McCormack Lines, Inc. v. Richardson,* 295 F.2d 583, 592–95 (2d Cir. 1961), *cert. denied,* 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962) (DOHSA); *National Airlines, Inc. v. Stiles,* 268 F.2d 400, 405–06 (5th Cir.), *cert. denied,* 361 U.S. 885, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959) (DOHSA).

In holding prejudgment interest recoverable under DOHSA, the Court of Appeals for the Fifth Circuit, in *National Airlines, Inc. v. Stiles, supra* at 405, observed:

Interest from the date of loss has long been allowed, of course, in admiralty for property loss. *The Natchez,* 5 Cir., 78 F. 183; *Geotechnical Corp. of Delaware v. Pure Oil Co.,* 5 Cir., 214 F.2d 476. The allowance of such interest is the rule except for good cause shown. Admiralty

thus stands on a different footing from the common law in this respect, for the general rule in common law had traditionally been that pre-judgment interest could not be allowed on an unliquidated tort claim.

Though the interest rule under DOHSA is generally described as within the discretion of the district court, *See Solomon v. Warren,* 540 F.2d 777, 794 (5th Cir. 1976), *National Airlines, Inc. v. Stiles, supra,* suggests a limited scope of discretion. Extraordinary delay in commencing or prosecuting a claim has been held an exceptional circumstance justifying denial of interest. *Sinclair Refining Co. v. SS Green Island,* 426 F.2d 260, 262 (5th Cir. 1970); *The President Madison,* 91 F.2d 835, 847 (9th Cir. 1937). At least when fault is mutual, it has been held that uncertainty respecting claims, extent of damage, and the party having ultimate liability "are factors to be considered by the trier of fact along with other facts and circumstances in determining if there exist the necessary 'peculiar circumstances' that will authorize the exercise of discretion to award less than full compensation by denying interest." *Sinclair Refining Co. v. SS Green Island, supra* at 262.

In affirming the award of prejudgment interest under DOHSA in *National Airlines v. Stiles, supra* at 405, the court said:

> Logically and sensibly, if the pecuniary loss to Mrs. Stiles for the death of her husband is $250,000, based on an expectancy of 20.2 years from the date of his death, she will not receive full value for her pecuniary loss if she does not receive the award until after judgment four and one-half years later.

> .  .  .  .

> This is simply the doctrine of *restitutio in integrum,* long a leading maxim applied by admiralty courts. *The President Madison,* 9 Cir., 91 F.2d 835, 845–847. It is quite obvious that a party suffering a financial loss from the death of a bread winner, just as from the destruction of a ship, can be placed in the same position as he previously enjoyed only if the award is made at the time of the loss or if interest for the time between loss and payment is allowed.

We are persuaded that the reasons justifying prejudgment interest under DOHSA and the Jones Act are equally applicable to actions brought under the general maritime law. Indeed, defendants, having had the use and benefit of the death award money during the prejudgment period, are in poor position to complain when required to pay interest on it. *See Dennis v. Central Gulf Steamship Corp.,* 453 F.2d 137, 141 (5th Cir.), *cert. denied,* 409 U.S. 948, 93 S.Ct. 286, 34 L.Ed.2d 218 (1972).

In the present case, there has been a delay approximating five years in securing a damage award, and no evidence that the Bank was guilty of extraordinary delay in commencing or prosecuting its claim. Other factors, however, including mutuality of fault and substantial grounds for uncertainty as to liability and the extent of damages, are also to be considered. As noted, these factors have a bearing on whether an award of prejudgment interest is appropriate. Hence, we remand to the district court with directions to reconsider the propriety of granting prejudgment interest in light of this opinion.

## CONCLUSION

The district court's judgment that Material Service is guilty of contributory fault is affirmed. Its judgment that Hart was free from contributory fault is reversed. The finding that total damages were $602,000 is affirmed. The case is remanded with directions to determine the degree of fault attributable to Hart, to reduce the damage total in proportion to the degree of fault attributable to Hart, and to determine whether prejudgment interest should be paid on that reduced amount.